CHARLOTTE M. HELLER *et al.*

*v.*

OTTO HELLER *et al.*

*Filed at Ottawa October 26, 1893.*

1. WILL—*insufficient description—devise construed to give an estate to donees as tenants in common.* A testator, after giving his widow an estate for life in all his lands, attempted to devise the remainder of the entire premises owned by him, to or for the benefit of his three sons, so as to give each distinct parts thereof, but the devise was made without such descriptions as were sufficient to vest in them distinct portions of the property: *Held,* that the devise to the sons should be construed as vesting the property in them as tenants in common.

2. SAME—*presumed to dispose of all the testator's estate.* Where a man makes his will, unless the contrary appears, it will be presumed that he intends to dispose of his entire estate. And if he fails to describe the portions given to his children, so that they can be ascertained, they will all take the whole as tenants in common.

3. The fact that a construction of a will results in a division of the property devised, in slightly different proportions from those represented by the frontage of the several buildings, affords no cause of complaint to one of the devisees, when the division thus reached is more favorable to him than the construction contended for by him.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

Mr. SAMUEL B. FOSTER, and Mr. EDWARD J. MCARDLE, for the plaintiffs in error.

Mr. FRANK A. JOHNSON, for the defendant in error Otto Heller.

Mr. N. A. PARTRIDGE, for the defendant in error Geo. Heller.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Otto Heller against Charlotte M. Heller and others, to obtain a construction of the will of August Heller, deceased, and to have the rights

of the parties in certain lands thereby devised ascertained and determined, and for partition. August Heller, in his lifetime, was the owner of the north two-thirds of lot 14 and the south half of lot 11, and jointly with his wife, Mary Heller, of the north half of lot 11, in block 101, in School Section Addition to Chicago. Lot 11 adjoins lot 14 on the north, and the property thus owned constituted one body of land, fronting east on Sherman street, Chicago, and having a frontage on that street of sixty-six and one-half feet, and running back one hundred and six feet to an alley.

On the part of the property fronting on Sherman street, August Heller erected three buildings, all fronting on the line of the street and running back sixty feet. The one farthest south, and which was the one built first, was a three story brick structure, twenty-three feet and one-half inch in width, the south line of the south wall being coincident with the south line of the north two-thirds of lot 14, and the north line of the north wall being three feet and five and one-half inches south of the north line of the north two-thirds of lot 14. At the date of the will, this building had over its front door the number 114.

North of and adjoining this building is a three story and basement building, bearing the number 112. This building, on the south side, for a distance of fifty feet from the front, rests on brick piers built against the north wall of the brick building, and for the remaining ten feet, the joists of the first floor are set into the wall of that building, and the south side of the first and second stories, for a distance of fifty feet from the front, is of wood set against the face of the north wall of the brick building, and the south side of the third story and basement, and of the west ten feet of the first and second stories, consists solely of the brick building, the joists being set into the wall of that building. The north side of the basement of 112, for about fifty feet from the front, consists of a brick wall, and the north side of the first and second stories

for the same distance consists of wooden studding, with lath, plaster and sheathing, about six inches in thickness, the studding being inserted into a wooden sill resting on the basement wall. The first and second stories of this building formerly constituted a separate two-story frame house fifty feet in depth, which was moved on to the premises and set against the brick building, on brick piers built on the south side, and a brick basement wall on the north. The width of this building, measuring from the brick building to the center of its north wall, is twenty feet, or measuring to the north face of the wall, twenty feet and three inches.

The north side of the rear ten feet of the first and second stories of this building is of wood, constructed upon a girder set into the west end of the basement wall and flush with its north face, and into the west brick wall. The north side of the third story through its entire depth of sixty feet, consists of wooden studding with lath and plaster, about six inches in thickness, set with its full thickness north of the face of the wooden partition of the first and second stories and of the brick basement wall, and supported by furring fastened upon the north side of the wooden partition of the second story. The north basement wall of this building stands wholly on the south half of lot 11, and is about three feet and four inches south of the south line of the north half of lot 11.

The north building, which is known as 110, is also a three story and basement building, of which the north wall is a brick party wall running back the full depth of the lot to the alley. The south wall of its basement is the north wall of number 112, and the walls of the first, second and third stories seem to consist of lath and plastering upon the walls of the corresponding stories of that building. The width of the north building, measuring from the center of the party wall on the north to the center of the wooden partition of the first story on the south, is twenty-three feet and four and one-half inches.

The front and rear walls of the three buildings are of brick, and form continuous walls three stories in height. In both 110 and 114 there is a hall running from the front to the rear of the building, furnishing a means of communication from Sherman street to the rear part of the lot. Number 112 has no such passage way.

On the rear or westerly side of the lot, fronting on the alley, is a brick two-story building, seventeen feet in width, and extending along the entire west side of the premises, being sixty-six feet in length. The first story of that building is constructed for a barn and for coal and wood rooms for the use of the tenants occupying the second story, and also of those occupying the buildings on the front part of the lots. These rooms are constructed without reference to the lot lines or to the situation of the lines or partitions dividing the front buildings. At the date of the will, the rear building had only one entrance to the second story, and that was from the alley into the first story at about the middle of the building, and thence by stairway to the second floor. The second story was divided into three suites of rooms, having this common entrance. Since the death of the testator, changes have been made in the rear building, by constructing an elevated platform along its east wall, outside stairways from the platform to the roof, and elevated passage-ways from the front buildings to the platform.

Between the front and rear buildings is an open yard twenty-five feet in width, with water-closets at the north and south ends for the use of the tenants of both the front and rear buildings, and two or more cess-pools are located in the intervening space.

Such being in brief the situation of the property in dispute, August Heller, on the 30th day of December, 1886, made his last will, and on the 3d day of January, 1887, he died, leaving him surviving, Mary Heller, his widow, and Otto Heller, George Heller, an insane person, and Louis Heller, then a

minor, his children and only heirs at law. His will was duly admitted to probate January 10, 1887, and the trustees named therein have since been acting as such. The only provisions of the will which are material here are those to be found in the second, sixth and eighth paragraphs. Those paragraphs are as follows:

"*Second*—I give, devise and bequeath all my real estate, wherever situated, to my beloved wife, Mary Heller, for and during her natural life, in lieu of all dower, with the provisions hereinafter mentioned, namely: That the trustees hereinafter named shall collect all the rents and profits of said real estate, and out of the same first pay all taxes and assessments on the same and keep the same in repair, and the remainder of said rents and profits, after paying all just and proper expenses, pay over, from time to time, to my wife, Mary Heller, taking her receipt for the same. But neither my said trustees, nor my wife, Mary Heller, shall have any power to sell or incumber said real estate during the lifetime of said Mary Heller, except in case there should be any proceedings begun, under the law of eminent domain of the State of Illinois, to condemn said real estate, or any part thereof, then, and in that case, I hereby authorize my said trustees to make a conveyance of said premises, or any part thereof, for and upon the best terms they may deem best, or they may let the compensation be ascertained as provided for by law, but with the further provision that the proceeds thereof shall be invested in lieu of the said real estate so conveyed or taken, and the said investment so made to be for the use and benefit of my said wife, Mary Heller, during the term of her natural life, with the same provisions in relation to rents and profits as hereinbefore expressed. And at the death of my said wife, Mary Heller, I give, devise and bequeath to my son Otto Heller, and to his heirs and assigns forever, my lot or lots, and the buildings thereon contained, known as number one hundred and ten (110) Sherman street, in the city of Chicago,

40—147 ILL.

and to my son Louis Heller, and to his heirs and assigns for-
ever, I give, devise and bequeath my lot or lots, and the build-
ings thereon contained, known as number one hundred and
fourteen (114) Sherman street, in said city of Chicago, but
with this restriction, that said Louis shall not incumber or
sell said premises, or any part thereof, until he reaches the
age of thirty years, should said Mary Heller, my wife, depart
this life prior to my said son Louis attaining the age of thirty
years : *Provided, however*, that my trustees hereinafter named
may, in their discretion, authorize said Louis to incumber or
sell one-half of said premises at any time after the death of
my said wife, Mary Heller, and before said Louis arrives at
the age of thirty years, should said trustees deem it necessary
so to do. And I give, devise and bequeath my lot or lots, and
buildings thereon contained, known as number one hundred
and twelve (112) Sherman street, in said city of Chicago, to
my said trustees hereinafter named, for the use and benefit of
my son George Heller, namely, to collect all the rents and
profits of said premises, and after paying all taxes and assess-
ments and paying all expenses of repairs, to pay over the rest
and residue of said rents and profits to my son George Heller,
and in case of his death, to convey said premises to the chil-
dren of said George Heller, by good and sufficient deeds of
conveyance.

"*Sixth*—All the rest and residue of my estate, including all
personal property, I give, devise and bequeath to my said
trustees hereinafter named, in trust, for the uses and purposes
hereinafter set forth, namely : First, they shall set aside and
invest the sum of $5000, the income of which shall be paid
annually to my son Louis Heller, for and during his minority,
for the purpose of his education, and when he shall attain the
age of twenty-one years, they, said trustees, shall pay over to
him the sum of $2500 from said sum so invested, and deliver
to him the balance of said sum so invested when certain gov-
ernment bonds which I now own become due and payable, and

which I desire should constitute a part of said investment; and second, the balance of said personal property, or so much thereof as is in money or bonds, shall be invested as best said trustees can, and the income thereof paid over annually to my wife, Mary Heller, during her natural life, and at her death said money or securities shall be equally divided amongst my said children, or their heirs or assigns, except that in the case of George Heller his portion shall go to his children, only; but all my personal property, other than money, bonds and securities, I direct and order that my trustees convey and deliver at once to my wife, Mary Heller, or as soon after my decease as practical, which personal property shall be and become the absolute property of said Mary Heller.

"*Eighth*—I hereby appoint my son Otto Heller, and my friend, Charles Bugenhold, as my trustees, to carry out the uses and trusts hereinbefore set forth, and I direct that my said trustees be not required to give bond or security for the faithful performance of their duties."

The bill alleges that, at the time of the execution of the will, there were no lot or lots in the city of Chicago known as number 110, 112 or 114, and that the buildings situated on the easterly portion of the premises in question are but sixty feet in depth, and are so constructed as to be dependent on each other and inseparable, and that the boundaries thereof can not be fixed or ascertained; that the building on the rear of the premises had no number or numbers and had never been known by any, and is so constructed as to be incapable of separation by lot lines, or any lines or planes through any part of the walls or partitions of the front buildings; that surveyors skilled in the art are unable to survey or locate the lots described in the will as 110, 112 or 114, Sherman street, Chicago, and that the descriptions are so vague and uncertain that the premises known by such description can not be located nor their boundaries ascertained, and that the descriptions therefore are incapable of any clear meaning.

The bill further alleges that it was the intention of the testator to devise to Otto Heller, the complainant, the remainder in one-third of the entire property, to Louis Heller, subject to the restrictions in the will mentioned, a remainder in one-third, and to the complainant and Charles Bugenhold, as trustees for George Heller, the remaining one-third, and that the will should be so construed; or that the complainant, Louis Heller and George Heller acquired an estate in remainder by inheritance, as tenants in common, of the north two-thirds of lot 14, the south half of lot 11, and the undivided half of the north half of lot 11.

The bill alleges and the proof shows that Mary Heller, the testator's widow, who at the time of her husband's death, was a tenant in common with him of the north half of lot 11, after his death and prior to the filing of the bill, conveyed her undivided half thereof to the complainant, and the complainant, for the pupose of enabling the court to make an equal division of the estate between the heirs of August Heller, offers by his bill to convey to Louis Heller and to the trustees of George Heller, each, an undivided one-third of the undivided one-half of the north half of lot 11.

The bill further alleges that, since the making of the will, the rents of the premises have greatly diminished, the premises having become undesirable for residence purposes for which the buildings were designed, and that the income is less than one-third of the current rate of interest on the present cash value of the land.

The bill prays that the will be construed and its true intent and meaning ascertained, and the several rights of the complainant and of each of the defendants in all the premises be ascertained and clearly set forth and that the boundaries of the premises devised be fixed and made certain, or, that it be decreed that the complainant and Louis Heller took, under the will, an estate in remainder of an undivided two-thirds of the north two-thirds of lot 14 and of the south half of lot 11

and of the undivided half of the north half of lot 11 and of the improvements thereon, and that the complainant and Charles Bugenhold, as trustees for George Heller, took an undivided third of the same premises in trust, for the uses and purposes set forth, or, that it be decreed that the devises are void for uncertainty of description, and that the complainant, Louis Heller and George Heller became each vested by inheritance with an estate in remainder, as tenants in common, in the premises above described, and that the rights of the complainant, as the owner in fee of the undivided half of the north half of lot 11 be ascertained and made certain, and for a partition.

Prior to the filing of the bill, Mary Heller, the testator's widow died, and her life estate in the premises in question was terminated. The cause was heard on pleadings and proofs, and a decree was entered, finding the facts as to the situation and description of the premises in question substantially as above set forth, and finding that, by a proper construction of the will, in the light of the surrounding circumstances, it was the intention of the testator to devise to his two sons, the complainant and Louis Heller, each, an equal one third part of the whole of lot 11 and the north two thirds of lot 14, and of all the buildings and improvements thereon, the title of Louis Heller being subject to the restrictions and limitations in the will mentioned, and that it was the intention of the testator to devise to the complainant and Charles Bugenhold, as trustees of George Heller, an equal one-third share and part of the same premises, buildings and improvements; that complainant is the owner in fee of the undivided one-half of the north half of lot 11, and is ready and willing to convey an undivided one-third thereof to Louis Heller, and an undivided one-third thereof to himself and Bugenhold as trustees of George Heller, and that Louis Heller and George Heller are wards of court and will be benefited by such construction of the will and by such conveyance, and

it was accordingly adjudged and decreed, that under and by virtue of the will of August Heller, deceased, the complainant and Louis Heller each acquired title to an undivided one-third of the whole of the premises in question, subject to the limitations and restrictions contained in the will, and that the complainant and Bugenhold, as trustees for George Heller, acquired an undivided one-third of the premises, and the complainant was ordered to make the conveyances offered by him in his bill, and it was further ordered and decreed that partition of the premises be made in accordance with their interests as thus established, and commissioners were appointed for that purpose. The commissioners having qualified, went upon the premises, and upon examination, determined and reported that they were so situated as not to be susceptible of division without manifest prejudice to the parties in interest, and also reported that their value was $54,525, and the usual decree was thereupon entered approving the report of the commissioners and for a sale of the premises. To reverse this decree, Charlotte M. Heller and Emma C. Heller, the children of George Heller, who were also made parties defendant to the bill, now bring the record to this court by writ of error.

We think the Circuit Court was correct in holding that it is impossible to so apply the descriptions in the will to the premises in question, as to divide them into three separate lots or parcels, which, at the date of the will or since, were or have been known or designated as numbers 110, 112 and 114, Sherman street. It is not contended that there is or ever has been any survey or plat upon which such subdivision of the premises was made. It is true that the east sixty feet, which constitute only a little more than one-half of the entire area of the lots, are occupied by three buildings which, at the date of the will, were designated and known by those numbers, but there is no pretence that the westerly fifty-six feet of the premises have ever been designated by those numbers, but the buildings thus numbered are so constructed as to present

very serious practical difficulties in the way of locating the division line between them. If the center line, or one of the exterior lines of the division walls between the buildings, at the surface of the ground, be adopted as division line between the separate parcels of ground, it will be found that the upper stories of one or more of the buildings project a considerable distance beyond such lines and that no perpendicular plane can be erected upon such boundary line which will in fact divide the buildings. It further appears that these buildings are so constructed as to be dependent upon each other, and that it would be difficult if not impossible to separate them. Also that the lines dividing them, if projected west to the alley, would coincide with no partition or division in the building located on the rear of the premises, but would pass through and divide the rooms and apartments in both the first and second stories of that building. These various considerations seem to us to show conclusively that it is impossible to divide the premises in question into three separate parcels by applying the descriptions contained in the will.

But while this is so, it is sufficiently clear that it was the intention of the testator to devise the remainder, after the life estate devised to his widow, in the entire premises, to his two sons Otto and Louis, and to the two trustees of his third son George. He first devises all his real estate, wherever situate, to his wife during her natural life, in lieu of her dower, and then evidently attempts to make a division of the same real estate, at her death, among his three sons. No subsequent portion of his will seems to be intended to embrace or dispose of any portion of the realty. The sixth paragraph it is true disposes of all the rest and residue of his estate, including his personal property, but that paragraph, when considered throughout, was plainly intended to apply to personal estate only, as it makes no provision for the conversion of real into personal estate, and no provision for any disposition of such real estate when converted. It is wholly occupied with direc-

tions as to the present investment and final disposition of certain funds, consisting of the moneys of the testator on hand, or to be subsequently derived from certain government bonds belonging to him, and is entirely silent as to any disposition to be made of any real estate or of its proceeds. We are unable to see therefore how by any possibility, any real estate can be held to be included in the trust created by the sixth paragraph.

Leaving that paragraph then out of view, the second paragraph is the only one by which the testator attempts to dispose of his real property. When a testator makes his. will, unless the contrary appears, it will be presumed that he intends to dispose of his entire estate. Construing the second paragraph in the light of that presumption, it seems clear· that he intended to devise the remainder in the entire premises in question to or for the benefit of his three sons. But as he has made the devise without such descriptions as are sufficient to vest in them distinct portions of the property in severalty, it necessarily follows that the devise is to be construed as vesting the property in them in equal portions as tenants in common, that is to say, an undivided one-third each to his sons Otto and Louis, and an undivided one-third to the trustees of his son George. This is the .interpretation put upon the will by the Circuit Court, and we are of the opinion that its decree in that respect is correct.

The fact that this construction of the will results in a division of the property in slightly different proportions from those indicated by the frontage of the three buildings is a matter of which the plaintiffs in error have no occasion to complain, as the division thus reached is more favorable to them than the other. The building numbered 112, which is the one devised to the trustees of George Heller, and the one in which his children, the plaintiffs in error, have an interest upon the death of their.father, has a smaller frontage by several feet than the other buildings, nevertheless the decree

makes the undivided part devised to the trustees of George Heller equal to those devised to the other devisees.

Nor is it important to determine whether, by an application of the equitable doctrine of election, the widow of the testator must be deemed to have elected to take a life estate in all the real estate of her husband in lieu of the undivided half of the north half of lot eleven, which she held as tenant in common with her husband, and to have thus relinquished her estate in fee to that portion of lot 11 in favor of her husband's devisees. If the doctrine of election applies, her title in fee to that portion of the lot is extinguished, and the remainder, after her life estate, in the whole property, passed by the will to her husband's devisees. If on the other hand, the doctrine does not apply, the same result is accomplished by the voluntary offer of the complainant, to whom she attempted to convey her title held as tenant in common with her husband, to convey to each of his co-tenants an undivided one-third of the interest so conveyed to him.

Some criticisms are made upon the proceedings of the commissioners appointed to make the partition, and upon the final decree of sale rendered upon the coming in of their report. We have examined the points made and find none of them tenable. The proceedings and decree seem to have been in compliance with the statute. It will of course be the duty of the court, when the premises are sold and the report of sale is presented for confirmation, to see to it that the sale is for a fair and adequate price.

We find no material error in the record, and the decree of the Circuit Court will be affirmed.

*Decree affirmed.*