(No. 25034.—

EDWARD I. SHIPPERT *et al.* Appellees, *vs.* HARRY W. SHIPPERT *et al.*—(WILEY G. SHIPPERT, Appellant.)

*Opinion filed April 17, 1939.*

CLYDE SMITH, for appellant.

WARNER & WARNER, JOHN P. DEVINE, and J. C. RYAN, (HENRY C. WARNER, and MOREY C. PIRES, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal to review a decree in a suit for partition of real estate, entered by the circuit court of Lee county, partitioning three farms in that county, of which John Shippert died seized, and which he left by will to his ten children and one grandchild. Four of the children are incompetents and the grandchild is a minor.

John Shippert devised these farms to Martha Shippert, his widow, for her life, and upon her death to go to his children. Martha Shippert died in January, 1932. Shortly after her death all of the children, with the exception of Harry W. Shippert, a son, and Olive A. Baker, a daughter, entered into an agreement whereby one of the farms, known in this record as the "home farm," should be retained by the heirs-at-law of John and Martha Shippert during the lifetime of any of the said children, and should not be sold at any time prior to the death of the last survivor of the

four incompetent children without written consent of all the parties. Later, Harry W. Shippert signed this agreement. Olive A. Baker died leaving a minor son, Earl W. Baker, who appears in this proceeding by guardian *ad litem.*

The petition in this case was signed by Edward I. Shippert and Estella M. Borncamp, as conservators of the four incompetent children, all of whom are adults. A guardian *ad litem* was appointed for the incompetents, and a trustee for unknown devisees of the last will and testament of Martha Shippert and the unknown heirs of Martha Shippert was also appointed. A counter-claim was filed by the guardian *ad litem* praying that the home farm be set off to the incompetents as their share of John Shippert's estate. Answers were filed thereto by the original plaintiffs and certain defendants. Appellant here, Wiley G. Shippert, a son, had entered his appearance in the cause and had admitted all of the allegations of the original complaint, and, in effect, joined in the prayer thereof. When the counter-claim was filed, he was ruled to plead instanter and, on his failure so to do, default was entered against him. He did not receive notice of the filing of the counter-claim and complains here that the court had no jurisdiction to enter a decree on the counter-claim. His counsel says that he had no notice of it and was not bound by the court's action thereon. None of the parties appeared to contest either the original bill or the counter-claim. Commissioners were appointed and reported fixing the value of the three farms and the interests of the incompetents therein, and recommending that the home farm be decreed to the incompetents as tenants in common, together with an owelty of $160.

The guardian *ad litem* for the incompetents objected to the owelty and on hearing the court fixed the amount of owelty to be paid to them at $1600. A sale was conducted of the other two farms, which appellant attended, and at which he bid on one of the farms. No objection was offered by him to the report of the commissioners recommending

that the home farm be set off to the incompetents. The two farms sold brought in excess of $6000 over the valuation placed upon them by the appraisal of the commissioners. The first objection made by appellant to the proceedings was filed to the report of sale. By that objection he contended, and contends here, that the court was without authority to set off the home farm to the incompetents, as was done, but if it be set off in kind it should have been to all the heirs, in common. He also complained that he did not have notice or knowledge of the filing of the counterclaim. He is deemed to have had notice of the report filed by the commissioners recommending that the home farm be set off to the incompetents. This was some time prior to the decree of the chancellor.

His principal contentions, here, are that the court had no power to enter a decree such as was entered, and that he did not have notice of the counter-claim. In support of his contention that the court was without power to enter the decree he cites sections of the statute pertaining to partition, and argues that there is no method other than that prescribed by the statute, by which partition may be had in this State. Section 43 of the statute relating to partition, as amended in 1937, (Ill. Rev. Stat. 1937, chap. 106, par. 42, p. 2342,) is as follows: "The common law writ of partition is hereby abolished, and statutory partition by petition at law is hereby discontinued. Proceedings for partition shall be solely in chancery in accordance with the provisions of this act." Counsel for appellant argue that this section is to be construed as limiting courts of chancery in their jurisdiction. If such is its correct construction, its validity can not be sustained, for, as has been repeatedly held by this court, the General Assembly has no power to cut down or limit the jurisdiction of courts of chancery as created by the constitution. *First Nat. Bank* v. *Bryn Mawr Beach Building Corp.* 365 Ill. 409; *Fenske Bros.* v. *Upholsterers Union,* 358 id. 239; *Stephens* v. *Chicago, Burlington and Quincy Railroad Co.* 303 id. 49.

In the early case of *Hess* v. *Voss,* 52 Ill. 472, it is announced that equity has inherent jurisdiction in cases of partition and the fact that a concurrent remedy may exist at common law or by statute in nowise affects the jurisdiction of courts of equity. In a case of partition a court of equity takes jurisdiction in order to do complete justice. Parties appearing before it submit their interest to the court. A suit for partition is exceptional to some extent, in that neither a cross-bill, counter-claim, nor formal issue between defendants is required. This is because, in such a suit, every person having an interest in the property is to be made a defendant and all parties to the record, whether complainants or defendants, are adversary parties in the sense that each one is bound to make known his rights and to have his interests determined by the decree, and all are bound by the decree when entered. (*Renfro* v. *Hanon,* 297 Ill. 353; *Wilson* v. *Illinois Trust and Savings Bank,* 166 id. 9.) It is also the rule that where one having title to or an interest in property, knowingly stands by and suffers it to be sold or disposed of under a decree without asserting his title or making known his claim, he cannot afterwards raise such claim. *Moore* v. *Gilmer,* 353 Ill. 420.

Under the inherent power of the court of equity to do complete justice the chancellor had power, if it was shown to have been for the best interests of all concerned, to set off the home farm to the incompetents and to direct that the other farms be sold and the proceeds divided among the balance of the heirs. The power of a court of chancery to order a natural partition of a portion of the premises involved and a sale of the remainder is recognized by this court and authorities generally. *Schaffenacker* v. *Beil,* 320 Ill. 31; Pomeroy's Eq. Jur. (4th ed.) sec. 2144.

The question then arises whether appellant has been injured by the decree. An analysis of the figures arising from the sale price of the farms sold shows that appellant and other competent heirs of the deceased receive more, notwithstanding the increase of owelty by the decree, than will

each of the incompetents. It would seem, therefore, that appellant is in no position to complain. Neither his contention as to the power of the chancellor to enter the decree, nor as to its justice, can be sustained. Nor can he complain that no notice was served on him of the filing of the counterclaim. He was in court by the original proceeding and was bound to take notice of all steps taken in the case. *Ruppe* v. *Glos,* 251 Ill. 80.

It also appears from the record that he was not without actual notice of the proposed plan of disposition of the property. He was, at that time, the tenant in possession of the home farm, which the commissioners set off to his incompetent brothers and sister. He is held to have known of the report of the commissioners, and it seems incredible that he did not know that they had visited the farm on which he was tenant and had set it off to the incompetents. Their report was available for his inspection. The master's notice of sale as published was for the sale only of the other two farms. As we have said, he appeared at the sale and took an active part as one of the bidders for one of the other two farms. Notwithstanding all these facts, he did nothing to raise any complaint or objection to the counterclaim of the guardian *ad litem* until he filed his objections to the master's report of sale. He must be held, therefore, to have waived the right, if any he had, to object to such provisions of the decree. One can scarcely expect that such a decree as was entered here will be reversed unless it works harm to him. *McCracken* v. *Droit,* 108 Ill. 428.

The action of the chancellor in decreeing the home farm to the incompetents was just under all the facts and circumstances of this case, and the decree is affirmed.

*Decree affirmed.*