GEORGE VARNEY, JR., et al., Plaintiffs-Appellees, v. CATHERINE J. YANGAS, Defendant-Appellant.

(No. 59443; )

First District (5th Division)—November 8, 1974.

*Rehearing denied December 31, 1974.*

Gary E. Dienstag, of Chicago, for appellant.

No appearance for appellees.

Lewis W. Schlifkin and Edward A. Berman, both of Chicago, for third-party appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiffs, owners collectively of a one-half undivided interest in the premises located at 153-59 West Chicago Avenue, Chicago, Illinois, brought an action for partition against defendant, owner of the remaining one-half undivided interest in said premises. This appeal is taken by defendant from the trial court's order denying her petition for a change of venue, and from the orders of the court decreeing partition and sale of the premises, approving the commissioner's report, approving the sheriff's report of sale and denying defendant leave to file a claim for damages against plaintiffs prior to disbursement of the proceeds of the sheriff's sale.[1]

On August 17, 1972, a complaint for partition of the premises was filed by plaintiffs George Varney, Jr., Nicoletta Varney, Thomas Brown and Penelope Brown against defendants Catherine Yangas, the Mercantile Laundry Co., Inc., an Illinois corporation, and James J. Flanagan, receiver. The latter two defendants were eventually dismissed when they vacated the premises. On October 30, 1972, defendant presented a petition for a change of venue from Judge Cohen. The petition recited in pertinent part:

"2. That the affiant has good reason to believe, and does believe, that she cannot have a fair and impartial trial of this action before the Honorable Nathan M. Cohen, Judge of the Circuit Court of Cook County, Illinois, Chancery Division, before whom the said

---

[1] Plaintiffs have failed to appear or file a brief. Edward Bottcher, appellee and purchaser at the judicial sale, has appeared and has filed an answering brief.

action is pending for the reason that the Honorable Judge Cohen is prejudiced and biased against her, her cause of action, and the nature of her action. That she also verily believes that Judge Francis T. Delaney, Judge Donald J. O'Brien, Judge Samuel B. Epstein and Judge James J. Mejda are biased and prejudiced against her, her cause of action and the nature of her action.

3. That the affiant has been informed, and verily believes, that the said Judges have made statements and expressed opinions which lead the affiant to believe that she cannot have an impartial and fair trial before the said Judges."

At the hearing held on October 30, 1972, defendant was represented by two attorneys, Mr. Feren and Mr. Page. It appears that Mr. Feren had prepared the petition for defendant, and that Mr. Page had been brought into the matter that morning as co-counsel. Mr. Page, however, stated that he was prepared to go ahead on the petition. Thereupon the trial court denied the petition finding it bad on its face. Following this ruling, Mr. Page stated:

"Well, your honor, may we withdraw the petition and consider the possibility of re-filing it?"

This request was also denied.

On January 11, 1973, after a denial of defendant's motion to dismiss, defendant filed her answer and counter-complaint for real estate taxes and insurance premiums advanced in the amount of $4,314.26. Plaintiffs admitted that said sum was due and owing to defendant. On February 5, 1973, the court granted plaintiffs' motion for judgment on the pleadings but ordered that defendant be paid the sum of $4,314.26 with priority from the proceeds of sale of said premises. A decree for partition was then entered which appointed Terrence O'Brien as commissioner to make partition of the property, or if the premises could not be divided, to fairly and impartially appraise the value of each piece or parcel and to make a true report to the court.

On March 7, 1973, defendant moved to vacate the decree for partition. On March 20, 1973, the trial court denied defendant's motion to vacate the decree of partition. On this date the commissioner's report appraising the property at $175,000 was presented to the trial court. At the hearing the following colloquy took place:

"MR. KATZ [Plaintiffs' attorney]: Now, my motion, Your Honor, is one for the filing of the Commissioner's report. A report has been submitted, a copy has been furnished to the defendants, and I ask that the report stand as approved. In the near future, I will submit a decree of sale.

THE COURT: All right. Any other objections?

MR. LEVIN [Defendant's attorney]: No, I have no objections to that."

The trial court thereupon approved the report of the commissioner. Furthermore, the trial court modified the decree of partition so that it would not affect the rights of the parties against the Mercantile Laundry Co., Inc., which had been the lessee of the said premises.

On April 6, 1973, with defendant's counsel present, the trial court entered a decree of sale ordering that the property be sold at public auction by the sheriff of Cook County for an amount equal to at least two-thirds of the valuation placed on the property by Commissioner O'Brien. Within the decree of sale the trial court again approved and confirmed the commissioner's report.

On May 7, 1973, defendant filed her motion to vacate (1) the decree of sale; (2) the decree of partition; (3) the order denying her petition for change of venue; and prayed for a trial on the issues. She alleged that the value of the real estate was $218,310 and attached to the motion as an exhibit a letter by S. E. Berkson to defendant appraising the real estate at $218,310. At the hearing held on May 10, 1973, defense counsel represented to the trial court that he would like to call Berkson as a witness but that Berkson was out of town and would not be available until May 28, 1973. After a lengthy hearing in which Berkson's appraisal was fully discussed by attorneys for both parties and the court, and after it was disclosed that the sale had been previously set for May 15, 1973, the trial court denied defendant's motion and specifically found that the matters raised were untimely.

On May 15, 1973, the property was sold by the sheriff at public auction to the only bidder, Edward Bottcher, for $116,666.67, exactly two-thirds of the appraisal of Commissioner O'Brien. Both defendant and her attorney were present at the auction, but neither bid nor raised any objections. On June 8, 1973, defendant filed verified objections to the sheriff's report of sale alleging, in substance, that the sale price was grossly below the value of the property. At a hearing held on June 13, 1973, defendant's objections were denied, the sheriff's sale was approved and the trial court approved delivery of the deed to Mr. Bottcher upon his payment of the balance of the purchase price.

On July 13, 1973, defendant filed a motion to extend time in which to file a motion to vacate the court's order of June 13, 1973, confirming the sheriff's sale. This motion was entered and continued for hearing to July 19, 1973. On July 18, 1973, defendant presented a motion to vacate the orders denying the (1) petition for a change of venue; (2) decree of partition; (3) decree of sale; (4) order approving the report of the com-

missioner; and (5) the order confirming the sheriff's report of sale. Furthermore, as an exhibit to this motion defendant attached an expanded appraisal report of Berkson, valuing the premises at $223,000. Additionally, and for the first time in the course of the proceedings, defendant moved to file a claim for damages, alleging:

"Defendant's property has been damaged during the pendency of this lawsuit by the plaintiffs and the lessee of the property, Mercantile Laundry Company, an Illinois Corporation now in receivership, and Defendant has been denied her right to damages for this loss to her real estate, and that it is the opinion of the Honorable Daniel A. Covelli, one of the Judges of the above-named court and Chancery Division * * * that this Defendant should be compensated for said damages to property, but that said Defendant hsas [sic] been erroneously barred from filing a claim for same in these premises."

Attached to the motion was a transcript of proceeding in a different case where Judge Covelli, on June 12, 1973, in the case of Catherine Yangas v. Mercantile Laundry Co, No. 72 Ch. 3739 (a suit to enjoin defendants from committing waste) denied this same motion, intimated that his view was that the damage claim should be made in this partition suit but expressly stated that he couldn't pass on the issue and the court in the partition proceeding would have to rule on it.

On July 19, 1973, after an extensive hearing, the trial court denied defendant leave to file her motion to vacate. The court noted that it had heard and denied these same arguments twice before; commented that there must be an end to this litigation; specifically found improper notice; and further found:

"5. That the Commissioner's Report was heretofore approved on March 20, 1973 pursuant to notice to defendant's attorney and defendant's presence in open Court; that at no time during that hearing did defendant or her attorney request the opportunity to examine the Commissioner or to furnish any evidence, or to offer any testimony or to cross-examine the Commissioner.

6. That the matter relating to valuations of the real estate were heard by this Court on the 10th day of May, 1973, and again on June 13, 1973 during the hearings on Objections to the Sheriff's Report of Sale; and that defendant at this time is attempting to introduce valuation evidence based upon opinions contained in certain written correspondence dated June 22, 1973 to the defendant.

7. That the plaintiffs have not been in possession of the premises partitioned herein during any of the period covered by this law-

suit; that the defendant prior thereto was acting as agent for all owners in the collection of the rent payment, of taxes and insurance."

On August 7, 1973, the trial court ordered distribution of the proceeds of the partition sale, and on August 17, 1973, defendant filed her notice of appeal.

OPINION

■■ Before reaching the merits of this appeal it is necessary to dispose of a question raised as to this court's jurisdiction. Appellee Bottcher has filed in this court a motion to dismiss this appeal as being untimely, which motion we took with the case. He argues that since notice of appeal was not filed until August 17, 1973, within 30 days of the August 7, 1973, order relating to disbursement of proceeds of the sale but not within 30 days of the orders of the trial court decreeing partition and sale, approving the commissioner's report and approving the sheriff's report of sale, the court has no jurisdiction to hear the appeal. We note that in none of the orders above mentioned did the trial court include the phrase "there is no just reason for delaying enforcement or appeal." (Ill. Rev. Stat. 1971, ch. 110A, par. 304.) We have reviewed the cases referred us by the parties and find on the authority of *Getzelman v. Koehler,* 14 Ill.2d 396, 152 N.E.2d 833, and *Coats v. Coats,* 92 Ill.App.2d 75, 234 N.E.2d 86, that the orders of the trial court prior to the August 7 order were not appealable orders. Therefore, appellee's motion is denied.

Defendant initially contends that the trial court erred in denying her petition for a change of venue and in denying her leave to withdraw the petition and file a new one. She argues, citing case authority, that the right to a change of venue on account of prejudice of the trial court is absolute, leaving no discretion if the requirements of the statutes are met, and that the venue provisions should be liberally construed in order to promote rather than defeat the right to a change of venue. Furthermore, she avers that the petition was timely and the trial court had not made any prior substantive rulings. Therefore, she concludes that since the trial court erred in this respect, all subsequent orders of the trial court are a nullity.

The trial court in making its ruling relied on *City of Chicago v. Marquardt,* 30 Ill.App.2d 108, 173 N.E.2d 825, and *Rosewood Corp. v. Transamerica Insurance Co.,* 8 Ill.App.3d 592, 290 N.E.2d 656. In *Marquardt* a non-resident litigant moved for a change of venue from 26 of 36 judges of the Municipal Court of Chicago without specifying any reasons why they were personally prejudiced. The lower court denied the petition for change of venue. In affirming this denial the appellate court stated:

"We believe that a petition for a change of venue filed by a non-resident litigant, naming twenty-six out of thirty-six judges as being prejudiced against her, with no specifications of the grounds of prejudice, is an attempt to use the Act to avoid any trial of the cause or to avoid an expected adverse ruling. It is a patent abuse of the Act. In the absence of specifications of prejudice or a reasonable showing of good faith in seeking a change of venue from twenty-six judges, a trial court is justified in determining that the petition is not filed in good faith, is used to abuse the Venue Act, and should be denied. We come to this conclusion because we believe the pronouncements that a trial court has no discretion where a petition for a change of venue is made on account of prejudice of the trial judge do not apply, when used to sustain a misuse of a substantial right." 30 Ill.App.2d 108, 111-12.

The *Rosewood* case was just recently affirmed by our Supreme Court at 57 Ill.2d 247, 311 N.E.2d 673. In that case the resident plaintiff filed a petition for change of venue from four of the seven judges of the chancery division of the circuit court generally alleging prejudice. The court held that:

"* * * the naming of four judges in the petition for a change of venue in this case, supported only by the general allegation of prejudice, is a violation of the venue statute and warrants denial of the petition." (57 Ill.2d 247, 253.)

The court went on to explain that:

"By this holding we do not intend that a party should be compelled to have his case heard by a judge who is in fact prejudiced against him. The petitioner has an absolute right to a change of venue from one judge based on a general allegation of prejudice. *However, if the petition seeks a change of venue from additional judges it must contain specific allegations to support the charges of prejudice against the additional judges * * *.*" (Emphasis supplied.) 57 Ill.2d 247, 253-54.

In attempting to distinguish these two cases, defendant has asserted that she has made specific allegations in paragraph 3[2] of her petition to support her general charge of prejudice. It is the opinion of this court that this averment does not meet the specificity requirement referred to in *Rosewood*. It is nothing more than a conclusion of prejudice from alleged unknown and undivulged statements and opinions. Defendant

---

[2] Paragraph 3 recites:

"That the affiant has been informed, and verily believes, that the said Judges have made statements and expressed opinions which lead the affiant to believe that she cannot have an impartial and fair trial before the said Judges."

further argues that even if the petition is faulty with regard to the other judges named, it was sufficient as against Judge Cohen, and that we should treat everything else as surplusage. This exact argument was presented and rejected by the appellate court in *Rosewood,* and we concur in that position. Here defendant moved for a change of venue from five of the eight judges then in the chancery division making only a general allegation of prejudice. Clearly *Rosewood* is controlling.

■■ Defendant further argues that Mr. Page had not drafted the petition because of his late appearance in the case and so should have been allowed to withdraw it and refile a new petition, also pointing out the absence of any possible prejudice. To support her position defendant has cited case authority where courts have allowed pleadings to be withdrawn and have granted continuances in order to allow pleadings to be prepared and filed. The major distinguishing fact, differing the instant case from the general principles urged by defendant, is the fact conceded in defendant's reply brief that "the request to withdraw the petition was made *after* it was denied." (Emphasis supplied.) Furthermore, Mr. Page had stated he was prepared to go ahead on the petition before the court's ruling and at that time never even moved for a continuance. Finally Mr. Feren who had prepared the petition was in court and was still representing defendant. Mr. Page's request came too late and was properly denied.

Defendant next contends that the trial court erred in refusing to allow defendant to produce in evidence Berkson's appraisal report and in refusing to allow her to cross-examine Commissioner O'Brien. She argues that due process requires that she be given the opportunity for a hearing on the issue of value and that by refusing to do so the court violated its duty to see that the sale was for an adequate price.

As was recited earlier, the court on February 5, 1973, appointed Terrence O'Brien as commissioner and ordered him to make his report. After notice was given to defendant, plaintiff on March 20, 1973, submitted the commissioner's report to the trial court. At the hearing held on this date defendant's counsel expressly stated that he had no objections to the report. He neither questioned the report nor sought to question Commissioner O'Brien. Nor did he even request a continuance. On April 6, 1973, the trial court entered a decree of sale and once more confirmed the commissioner's report; there was no objection by defendant. It was not until the May 10, 1973, hearing on defendant's motion to vacate that she alleged that the commissioner's valuation was inadequate. It was at this time that she presented Berkson's appraisal letter to the trial court and requested that she be allowed to call Berkson as a witness but stated that he would not be available until May 28, 1973. This occurred just 5 days

before the sale was to be held, and the trial court denied defendant's motion specifically finding it was untimely. Finally it wasn't until July 18, 1973, in another motion to vacate that defendant specifically averred she was denied the right to cross-examine Commissioner O'Brien. Attached to this motion was a more detailed appraisal report by Berkson. It should be noted that although the court would not allow a further hearing on the issue of value and incidentally would not allow Berkson's report to be presented in evidence, the reports of proceedings demonstrate that the trial court had read the two appraisal reports of Berkson, and that these reports were made the subject of extensive debate by counsel.

■■ The trial court in a partition proceeding has discretion in approving or disapproving the commissioner's report and may appoint other commissioners to revalue the premises. (Ill. Rev. Stat. 1949, ch. 106, par. 60.) "The guaranty of due process of law requires that every man shall have the protection of his day in court * * *." (*City of Chicago v. Cohn*, 326 Ill. 372, 374, 158 N.E. 118.) Once being given the opportunity of a hearing, a person "* * * will not be permitted, when in court, to lie by and permit errors in the commissioners' report to intervene * * *." (*McCracken v. Droit*, 108 Ill. 428, 432.) It has been held that where no objection was offered to a commissioner's report, where the objector had actual notice of the report and did not raise his claims until he filed his objections to the master's report of sale, he will be held to have waived his objections to the report. *Shippert v. Shippert*, 371 Ill. 267, 20 N.E.2d 597.

■■ In the instant case defendant was silent through two hearings and allowed almost 2 months to intervene before raising any objection to this report or asking for the right to introduce evidence and cross-examination. It was not until 5 days before the sale was set to take place that she endeavored to raise this issue of valuation, and even then she wasn't prepared to put Berkson on the witness stand. The proceedings connected with partition actions are long and involved. Plaintiffs' complaint for partition had been filed in August of 1972. We will not allow a party to step in at the last minute to raise objections which should and could have been raised earlier and so further delay the course of partition proceedings. Defendant had the opportunity to present evidence and to cross-examine witnesses at the March 20, 1973, hearing. This she failed to do, and this is all due process requires. Even if she only had doubts as to the valuation submitted at this time, she could have requested a continuance. Upon this state of the record we hold that the trial court did not abuse its discretion in not ordering a rehearing.

Defendant further argues that the trial court erred in confirming the

sheriff's report of sale because the purchase price was inadequate. Once more she points to Berkson's appraisal of the premises and argues that the court has a continuing duty to see that the sale is for a fair price. *Heller v. Heller*, 147 Ill. 621, 35 N.E. 798.

Defendant does not argue that the mode of carrying out the sale was irregular. She only complains of the price. There was only one person who bid at this sale, Bottcher, and he bid two-thirds of the appraisal price as required by statute. (Ill. Rev. Stat. 1949, ch. 106, par. 60.) Defendant had every opportunity to bid herself. On June 13, 1973, the sale was confirmed.

■■ A chancellor has broad discretion in approving or disapproving a report of sale, and his discretion will not be disturbed unless there is a clear abuse of that discretion. (*Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279, 8 N.E.2d 671; *Ryerson v. Apland*, 378 Ill. 472, 38 N.E.2d 712.) "It is the policy of the law to give permanency and stability to judicial sales and to the purchaser the benefit of his bid. [Citation.] To disturb judicial sales for slight causes would impair that confidence essential to induce persons to become purchasers; * * *." (*Blancett v. Taylor*, 6 Ill.2d 434, 438, 128 N.E.2d 916.) In *Rader v. Bussey*, 313 Ill. 226, 231, 145 N.E. 192, it was stated:

> "Where a judicial sale has been conducted in the usual manner and in accordance with the directions and order of the court and the purchaser is a stranger to the order of sale, as appears to be the fact of this case, mere inadequacy of price will not justify a court in vacating the sale, so as to deprive the vendee of the benefit of his purchase, unless the inadequacy is such as amounts to evidence of fraud."

Defendant has argued that the court has a continuing duty to oversee the sale. There is no question raised as to the mode of sale. We interpret the court's continuing duty to apply basically to the type of case where circumstances have changed between the confirmation of the commissioner's report and the sale affecting the appraised value or where it is alleged that the actual conduct of the sale was irregular. No such change of circumstances has been alleged in the instant case. Furthermore, even if we were not to view defendant as being estopped from using Berkson's report as grounds for setting aside the sale, we do not feel that defendant's sole averment of inadequacy of price is sufficient for us to hold that the trial court abused its discretion.

■■ In connection with this latter point we note that it is well established that a condition precedent to a resale where inadequacy of price is alleged is that the objectors should bring the money into court, or make an advance bid, or give a guaranty or bond that there will be no loss on

a resale. (*Blancett; Illinois Joint Stock Land Bank v. Conard*, 288 Ill.App. 475, 480, 6 N.E.2d 232.) From the motions filed in this court by the parties it is apparent that there have been two fires on the premises and that there is a real question as to whether a resale of the property could bring a greater price than that bid by Bottcher. Also, defendant has made no guaranties as are a prerequisite to a resale. Therefore, we find that the court did not abuse its discretion in overruling defendant's objections and confirming the sale.

On July 13, 1973, defendant filed a motion to vacate several of the mesne orders of the trial court. Within this motion, and for the first time in the proceedings, she argued that the premises were "damaged during the pendency of this lawsuit by the plaintiffs and the lessee of the property, Mercantile Laundry Company" and prayed for leave to file a claim for these damages. The trial court denied this motion, and defendant contends this was error. Attached to the motion was a transcript of proceedings in a different case wherein Judge Covelli on June 12, 1973, in the case of Catherine Yangas v. Mercantile Laundry Co., No. 72 Ch. 3739, denied this same motion, intimated that his view was that the damage claim should be made in the partition suit but expressly stated that he couldn't pass on the issue, and the court in the partition proceeding would have to rule on it.

Aside from citing some general principles of law, defendant has not specifically referred this court to any authority to support her position. We view this portion of defendant's pleading as a motion to amend her counter-complaint or to set up a supplemental pleading. (Ill. Rev. Stat. 1963, ch. 110, pars. 39, 46.) Under these circumstances Ill. Rev. Stat. 1949, ch. 106, par. 71, provides that the Civil Practice Act shall control. The determining factor for overruling a judge's disallowance of a motion to amend or to add a supplemental pleading must be found in a "clear abuse of his discretion." (*Ennis v. Illinois State Bank of Quincy*, 111 Ill.App.2d 71, 248 N.E.2d 534; *Rank v. Rank*, 107 Ill.App.2d 339, 246 N.E.2d 12.) It has been held that if the motion contains a new theory and granting it would further delay the proceedings, the timeliness of the motion may be considered in denying it. *Nurnberger v. Warren & Van Praag, Inc.*, 133 Ill.App.2d 843, 272 N.E.2d 234.

■■ Although defendant averred that these alleged demages occurred throughout the pendency of the lawsuit, it was not until July 13, 1973, that she chose to assert her claim. In her original counter-complaint she only made claims for taxes and insurance which were conceded by plaintiffs. It becomes obvious that if this motion had been allowed, the proceedings would have been further delayed and evidence on an entirely new theory would have to have been presented. We note that although

defendant claims both plaintiffs and the Mercantile Laundry Co., Inc., were responsible for this damage, the latter was dismissed from this suit very early in the proceedings. Furthermore, defendant has not contested the trial court's finding that:

> "* * * the plaintiffs have not been in possession of the premises partitioned herein during any of the period covered by this lawsuit; that the defendant prior thereto was acting as agent for all owners in the collection of the rent payment, of taxes and insurance."

Nor can we view Judge Covelli's statement as anything more than an expression of opinion not based on a thorough knowledge of the entire proceedings in this partition action. Finally, we note the trial court specifically amended the decree of partition so that it would not affect the rights of the parties against the Mercantile Laundry Co., Inc. Under these facts and circumstances we cannot find that "clear abuse of discretion" which would justify reversing the trial court's order.

For the reasons above stated the judgment is affirmed.

Judgment affirmed; appellee's motion to dismiss appeal denied; defendant's motion denied.[3]

SULLIVAN, P. J., and LORENZ, J., concur.

---

[3] Defendant filed a motion in this court praying that we order the disposition of insurance proceeds covering the losses from a fire which occurred on the premises on February 26, 1974. Because of our decision on the merits of this appeal, defendant's motion is denied.