Bernean Ritgers, Plaintiff-Appellee, v. City of Gillespie, Defendant-Appellant.

Gen. No. 9,887.

Opinion filed June 19, 1953. Released for publication July 7, 1953.

ALVIN G. WHITEHOUSE, and J. E. WENZEL, both of Gillespie, for appellant.

D. A. McGRADY, of Carlinville, for appellee.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This is an appeal from a judgment entered in the circuit court of Macoupin county, Illinois, in the amount of $1,000 in favor of Bernean Ritgers and against the City of Gillespie, Illinois. The cause was tried before a jury and grows out of an accident on December 19, 1950, when the plaintiff fell on the ice on a sidewalk in the City of Gillespie.

The city hall of the City of Gillespie is located at the intersection of Montgomery street and Chestnut street and the place of the accident was at or near the curb of Montgomery street on the west side of the street in front or adjacent to the city hall. The plaintiff had walked north on the east side of Montgomery street, to Chestnut street, crossed Montgomery street to the west and was stepping up on the curb when she slipped on the ice and fell, breaking her ankle in three places and a bone in her leg. She was picked up by a Coca Cola employee and taken to a doctor. There does not seem to be much question as to the nature or extent of the plaintiff's injuries.

At the place of the accident, the sidewalk on Chestnut street has a decided slope to the entrance of the

488

city hall which is located some ten or fifteen feet west from the corner of the building. The slope comes down from the entrance to the northeast corner of the building, which is the corner where the plaintiff slipped and fell on the ice. The sidewalks there are fairly wide. At this northeast corner of the city hall, there seems to be an old bell tower, which forms a cupola. The roof of the cupola, which is hip-roof construction, comes down on the north and east side of the building and overhangs the building proper about one or two feet. On the Montgomery street side, there is a gutter with a downspout coming down on the east side of the building, some few feet to the south of the corner which drains into the sewer. There is some evidence in the record that the gutter and the downspout had been in a leaky condition for some time. On the north side there does not appear to be a gutter and the rain on this side falls on the sidewalk. The evidence of the plaintiff shows that the sidewalk from the corner and curb of the southeast corner of the intersections of Montgomery and Chestnut streets was covered with ice, up to and past the entrance to the city hall. The plaintiff stated on examination that it was icy in a solid sheet as far as she could see, and on cross-examination stated that she meant only past the entrance to the city hall and not all down the street; that the weather was cold but not bitter cold, and that there was ice on the streets of Gillespie; that there were patches where the ice had been removed or worn off and that she observed the ice in front of the city hall, but she was going that way and stepped up on this patch of ice on which she fell and suffered her accident. She was not wearing galoshes and stated that she had left her home that morning without them; that she did not think she needed them. There is also evidence that the weather had been freezing for several

days and that ice conditions in the City of Gillespie were generally bad.

The evidence as to the condition of the corner at the time of the accident is conflicting. A grocery clerk, who testified for the plaintiff and who admitted that he believed Mrs. Ritgers should be paid for her injury, testified that the condition of the corner as to ice had been bad for some time; that he had slipped and fallen there himself several times and that he generally walked around it; that the water coming off the cupola, either down the downspout or off the edge of the roof, drained across the sidewalks; that there was a leak in the downspout. The defendant's evidence was to the effect that the sidewalk was cleaned that morning by the Superintendent of Streets and his assistant; that there was no break in the downspout and that any water coming down the downspout drained into the gutter; that there was no ice on the sidewalks in front of the city hall or around the city hall after eight o'clock on the morning of the accident. The accident happened about 10:00 o'clock, a. m. This testimony is corroborated in part by the Mayor of the City who testified that when he went to the city hall at 3:00 o'clock p. m. of the day of the accident, there was no ice on the sidewalk in front of the city hall; that there had been no notice and he did not know of any defect in the downspout; that any water draining into the downspout would drain into the sewer and not on the sidewalk on Montgomery street; that the curb was level with the sidewalks; that any water draining on the sidewalk would, on account of the slope, drain into the gutter of the street. This position is also corroborated by a Mr. Loren C. Scott who also testified that he saw the walks cleaned and that the walks were clean on Montgomery street and all clean from the Chestnut

street side from the city hall to the curb on Montgomery street.

■ The question of the liability of a city to maintain its streets and sidewalks has been passed upon by our courts many times. It has been held that the only duty imposed on a city is to exercise reasonable care to keep its sidewalks in a reasonably safe condition for the use of persons who are themselves in the exercise of due care and caution for their own safety. *Molway v. City of Chicago,* 239 Ill. 486. Where a person is injured by reason of a defect in the sidewalk or street, it has been held that the city can only be found guilty of negligence when the defect, allegedly causing the injury, is such that a reasonably prudent man should anticipate some danger to persons walking upon it. *Walter v. City of Rockford,* 332 Ill. App. 243. There are a number of cases holding that a city is not liable where a pedestrian trips and falls where parts of the sidewalk are at different levels, the test seeming to be if the sidewalk was reasonably safe, the city would not be liable. *Puck v. City of Chicago,* 281 Ill. App. 6; *City of Chicago v. Bixby,* 84 Ill. 82. These last cited cases relate to differences of level in the sidewalks or streets and are only cited to show the general law as to the liability of cities. In this case another question arises, namely, what is the liability of a city for injuries caused by icy conditions on its streets and sidewalks? The authorities in Illinois generally agree that the city is not liable for injuries resulting from the general slipperiness of streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes. *Strappelli v. City of Chicago,* 371 Ill. 72; *Casper v. City of Chicago,* 320 Ill. App. 269; *Stieb v. City of Chicago,* 345 Ill. App. 505; *Trumbly v. City of Chicago,* 335 Ill. App. 122; *Cronin*

*v. Brownlie,* 348 Ill. App. 448. The court in the case of *Cronin v. Brownlie,* says: "The law is settled in this State that a city is not liable for injuries resulting from the slipperiness of its streets and sidewalks caused by the presence of ice and snow accumulated as a result of natural causes. (*Strappelli v. City of Chicago,* 371 Ill. 72.) The basis of this rule of law is that it is unreasonable and impractical to compel a city in our climate to perform the labor necessary to remove ice and snow from its streets and sidewalks to keep them safe for travel. If the accumulation is caused by some defect of the street or sidewalk and this creates the dangerous condition, then a city may be liable. (*Graham v. City of Chicago,* 346 Ill. 638.)" No arbitrary rule can be laid down as to the degree of care required of a person injured while using a defective highway or street but municipal corporations are not insurers against accidents and the only duty of a municipal corporation is that it shall maintain its streets in a reasonably safe condition for the purpose for which the street is devoted and it is only bound to use reasonable care to keep its streets reasonably safe for ordinary travel thereon by persons using due care and caution for their safety. Municipal corporations cannot be held liable for every accident that occurs within their limits, but defect must be such as could have been foreseen and avoided by ordinary care and prudence of city authorities. Where a defect in a street is caused by failure of the city to repair in general, city is not liable unless it had notice of defect, or of such facts and circumstances as would by exercise of reasonable diligence lead prudent persons to such knowledge. *Thien v. City of Belleville,* 331 Ill. App. 337.

The test seems to be that a city is not liable for natural conditions of snow and ice but that if the snow or ice is caused by artificial conditions, then the

492

city is liable. In the case of *Graham v. City of Chicago,* 346 Ill. 638, the city had flooded a school yard for the children of the school to skate upon. The water had run over and on to a sidewalk and frozen at the place the accident occurred and the condition had existed for some thirteen days prior to the accident, and the city had neglected to remove the ice, and the court there held that the city must be charged with knowledge of the dangerous condition. In the instant case, artificial conditions, if there were any, must rest upon the alleged facts of a leaky downspout and the failure to conduct the water from the roof of the cupola to the sewers, so that the water accumulated on the sidewalk causing the dangerous condition. If there was a leak in the downspout and the city had knowledge of its condition, or the condition had existed long enough that the city should have known of its existence, and had failed to make the condition reasonably safe, then it would be liable. The same is true as to the dripping of water from the edge of the roof of the cupola on Chestnut street. If the city knew of the condition caused by the dripping of water on the sidewalk and consequent freezing in cold weather and had done nothing to remedy it, then it would be liable. In other words, if the ice on the sidewalks had been caused solely by natural causes, then the city is not liable. If caused by something that made the condition artificial and not natural, then the city is liable. The liability can be treated as a matter of law but the questions of fact are those that must be decided by a jury or a court sitting as a jury. As we have held many times, we will not disturb the verdict of a jury on a question of fact, unless manifestly and palpably in error.

 One of the questions raised by the defendant in support of its motion for a judgment notwithstanding the verdict was that the evidence showed that the

plaintiff was guilty of contributory negligence as a matter of law, at the time of her injury. The plaintiff gave the following answer to the following question: "Q. Did you notice the condition of the sidewalk at that point? A. It was very icy and very thick, yes sir." On cross-examination she testified "the whole sidewalk was covered with ice where I stepped up." She testified further that the ice ran as far west, the direction she was going, as far as she could see up the street from where she fell. In the case of *Cronin v. Brownlie*, 348 Ill. App. 448, at page 457, the court said: "Appellant urges that regardless of the question of the negligence of the defendant the plaintiff cannot recover because she was guilty of contributory negligence as a matter of law. Counsel for both parties cite *Blumberg v. Baird*, 319 Ill. App. 642, 1st Dist. (Abstract Decision) as supporting them. In this case the plaintiff tenant of an apartment building suffered injuries by slipping on steps leading from her third-floor apartment to the ground. She brought suit against her landlord and obtained a verdict. The handrail and steps were covered with ice. The janitor of the building had cleared the steps three or four times prior to the accident. The plaintiff tenant had observed the condition of the handrail and steps but proceeded nevertheless and slipped on the first step and received injuries. The Appellate Court held that her use of the steps knowing of their dangerous condition was contributory negligence as a matter of law and that the trial court should have granted defendant's motions for a directed verdict or a judgment notwithstanding the verdict. On examination of this case we do not believe that the court held that defendant was or was not guilty of negligence. The judgment was reversed on the ground that the plaintiff was guilty of contributory negligence as a matter of law. The court said: " 'It must be conceded, of course, that the question

of contributory negligence is ordinarily one of fact for the jury, but the law is equally well settled that where there is no conflict in the evidence and where the facts are not in dispute, the question becomes one of law for the court. *Beidler v. Branshaw,* 200 Ill. 425. As heretofore indicated, one who blames another for an injury must allege and affirmatively prove that he himself was in the exercise of due care and caution for his own safety, and we think plaintiff's conduct, whether it be characterized as the assumption of risk of the hazards and dangers of the condition of the back stairway, which were plain, open and obvious to her, as defendant argues, or contributory negligence, the fact remains that plaintiff was fully as cognizant of the slippery condition of the back stairway, and probably more so, than the defendant or anyone in his employ, and was therefore charged with a duty equally as great as that sought to be imposed upon defendant. . . .' "

The facts in the case before us, insofar as the knowledge of the plaintiff as to the condition of the street at the point where she fell, are quite parallel to the *Blumberg* case above cited, where the court held that the contributory negligence of the plaintiff prevented her recovery. In this case the plaintiff was fully aware of the icy condition of the sidewalk that she attempted to walk upon. She exposed herself to a known danger; knowing all the risks incident thereto.

As aptly stated in *Sanders v. Smith,* 5 Misc. 1, 25 N. Y. Supp. 125 and quoted in the *Blumberg* case above mentioned and quite parallel to the factual situation here: "To require the defendant to pay her, [plaintiff] for her injuries would be to require the defendant to take better care of the plaintiff than she should take care of herself."

We are fully aware that the question of contributory negligence is one for the jury and that the

jury in this case found that the plaintiff was not guilty of contributory negligence and it would be our duty to follow the findings of the jury unless it is established from a review of all the evidence considered in all aspects most favorable to the plaintiff, there is a total failure of the plaintiff to prove that she was in the exercise of due care and caution for her own safety at and immediately prior to the time of the injury. *Illinois Central R. Co. v. Oswald,* 338 Ill. 270.

 From the testimony of the plaintiff and all of her witnesses, it appears to us that the plaintiff did not use the same care and prudence that an ordinarily prudent person would have used and that the lack of the same, was the proximate cause of her injury and hence she was guilty of contributory negligence as a matter of law and should not recover.

The court gave the following instruction for the plaintiff: "The court instructs the jury that if you believe from the evidence that the plaintiff was injured by reason of the defendant's negligently failing to keep its sidewalk in reasonable good condition or negligently allowed the same to remain in an unsafe condition, as explained in these instructions, and without fault on her part, and that she sustained damage, then the jury have a right to find for her such an amount of damage as the jury may believe from the evidence will compensate her for the personal injury so received, as for the expenses, if such were proved, as she has incurred in endeavoring to be cured, and also for the pain and suffering undergone by her, and for any permanent injury she has suffered, if any such has been proved, not exceeding $5,000.00."

 When this instruction is carefully read, it will be noted that it has the effect of a peremptory instruction which fails to include the requirement that the plaintiff be in the exercise of due care and caution

496

for her own safety. The instruction does contain the words: "and without fault on her part" but the words are inserted directly after the statement of the duty of the defendant to keep its sidewalks in reasonable good condition and could not be read by an average juror to mean that the plaintiff would have had to be without fault on her part in going upon the icy walk. We have held many times that a plaintiff must include all of the necessary requirements for recovery in a peremptory instruction or risk the chance of reversal upon review. We realize that this instruction does not direct a verdict but it states: "Then the jury have a right to find for her" which is equivalent to telling them to find for her.

■ There are other questions raised which would require a reversal and remandment of this case but as we have come to the conclusion that the case will have to be reversed without remanding, we do not feel it necessary to lengthen this opinion by discussing them.

■ The trial court was in error in refusing to direct a verdict for the defendant at the close of plaintiff's case and likewise erred in not allowing the motion for judgment notwithstanding the verdict, for defendant.

*Judgment reversed.*