Jean T. Fitzsimons, Appellee, v. National Tea Company, a Corporation, and Milwaukee-Golf Development Corporation (National Tea Company, a Corporation, Appellant).

Gen. No. 11,422.

Second District, Second Division.
February 23, 1961.
Rehearing denied April 15, 1961.

Eckert, Caldwell & Gleason, of Woodstock, for appellant.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellee.

CROW, P. J.

This action was brought to recover damages for personal injuries sustained by the plaintiff, Jean T. Fitz Simons, when she fell on some ice in the parking lot at a shopping center at Libertyville, Illinois February 13, 1958. The action was originally commenced against National Tea Company and Milwaukee-Golf Development Corporation, as the defendants. At the close of the plaintiff's evidence the defendants moved for a directed verdict. The Court sustained the motion of the defendant Milwaukee-Golf Development Corporation. The motions of the defendant National Tea Company then and at the close of all the evidence for a directed verdict were overruled. A verdict was returned finding the defendant National Tea Company guilty and assessing the plaintiff's damages at $7500.00. Judgment was entered on the verdict. Thereafter the defendant National Tea Company filed a post trial motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. Those motions were overruled. The defendant National Tea Company appeals.

The plaintiff, age 50, was a registered nurse, employed at the Lake Forest Hospital as administrative supervisor. The defendant Milwaukee-Golf Development Corporation was the owner of a shopping center on the northeast corner of Milwaukee Avenue and Hurlburt Court in Libertyville. The shopping center consists of one large building housing six separate stores, each of which is leased by Milwaukee-Golf Development Corporation to a different type business. All of the stores were at the eastern edge of the shopping center. On the west and north sides of the building was a parking lot, with a black top surface, which was used by all tenants of the shopping center and the potential customers of all the various stores. The defendant National Tea Company's store was at the northwest corner of the building.

The lease of the National Tea Company and the leases of the other tenants provided that each should have "community parking in accordance with" plat attached to each lease. No specific area of the parking lot was assigned to any particular tenant. The lease of the defendant provided, in part " . . . the lessor, . . . demises and leases to the lessee the premises located at Libertyville, Illinois approximately 85' x 150' irreg., including . . . rights of way, . . . The demised premises include parking space—community parking in accordance with plot plan attached hereto. It is further agreed . . . that in event the parking lot area herein demised is not completed in its entirety and ready for use on the day of lessee's store opening, a rental credit of Ten Dollars ($10.00) per day is hereby granted and allowed by the lessor to the lessee until such parking lot area is completed and usable. To have and to hold the same, unto the lessee . . . In consideration of the demise and leasing of the premises aforesaid by the lessor, the lessee covenants, . . . to pay to the lessor, as rental for

310

said demised premises, during said term, . . . ." No specific provision was made in any of the leases for snow removal in the parking lot. A sign above the main entrance to the defendant's store, bearing the word "National," said "free parking while shopping." There was another sign at the northwest corner of the parking lot with the same legend.

The occurrence took place about 5:40 p.m., February 13, 1958. It was dark. Jean T. Fitz Simons, riding in an automobile driven by her husband, David R. Fitz Simons, rode into the parking lot. The car was parked at the north edge of the lot approximately 50 feet from the front door of the defendant National Tea Company's store. The plaintiff intended to purchase groceries at the store. The artificial lighting was good. The parking area where the cars parked was covered with ice. The weather was clear and cold. The last snowfall of any consequence was on January 20th or 21st, 1958 when there had been a very heavy snowfall. Following that the defendant National Tea Company had had a snow plow push the snow located in the parking lot north and west of its store into two large piles at the east end of the parking lot. There was a drain at the west end of the north side of the lot. There were days of alternate thawing and freezing between January 21st and February 13th when some of that snow would melt and drain across the lot to the drain at the west end and freeze in places. The ice along the north edge of the parking lot was rough and dark. It had ridges made by wheels of automobiles. The plaintiff did not recall being at the shopping center between the January snowfall and the accident.

The plaintiff was wearing pumps with walking heels. She looked and was aware of the ice as she opened the right side front door of the car and stepped out. She closed the door, put her right hand on the

car for support and proceeded to step forward south toward the store entrance of the defendant National Tea Company. She took three or four steps. She got to the rear of the car, to the area where the melting snow had accumulated into ice most heavily, and in attempting to walk over an incline formed by the accumulated ice she suddenly slipped on the ice and fell. It was rough, rutted ice. At the time she fell she was still supporting herself with her right hand on the car. She felt extreme pain in her left hand. Her husband did some shopping at the defendant's store after the injury.

She sustained fractures of both bones of the left forearm approximately one inch above the wrist joint. She was treated at the hospital by her attending physician, Dr. John J. Milroy, and as an out patient for eight months. The fractures healed. But, in the opinion of the plaintiff's physician, the plaintiff sustained permanent injuries to the effect that there was a deformity of the radius, protrusion of the tip of the ulna, limitations of five degrees in extension and fifteen degrees in flexion of the left wrist, a weakness of grip, the back of her left hand and forearm continued to ache and she had a sharp shooting pain in the forearm if she over-extended her wrist, and there is or would be some traumatic arthritis. She was unable to work for about four weeks. She worked with the arm in a cast for about three weeks. The arm was then in a sling for about two weeks. Thereafter it was still painful, limited in its use, and somewhat of a handicap in her work and in certain personal matters such as dressing, etc.

The testimony of the defendant National Tea Company's manager was, in part, to the effect that he had been instructed by his Company to have the north and west area of the parking lot in front of its store plowed whenever it was needed, and he did so. That

312

is the area where the plaintiff fell. There is no evidence of the owner-landlord's plowing that area. The defendant had attempted to clear the accumulated snow from the area of the parking lot used by its patrons on the day following the heavy snow in January. In doing so it had had a great deal of snow piled at the east end of the lot. The parking lot sloped from the south towards the north, to a point about midway in the lot, and was flat from the middle to the north edge, and it also sloped from the east towards the west, the entire length of the lot. Between the date of that snow plowing and the day of the accident there were alternating thaws and freezes and the two large piles of snow at the east end of the lot would melt and drain down towards the west where the drain was located. The defendant's store manager admitted that ice accumulated in the path of that melting snow, that it was on some of this ice that the plaintiff fell, that it could have been there 2 or 3 days, and it looked slippery and was about 2 inches thick. He did not recall putting any salt or cinders in the area where the plaintiff fell between the January snow and the accident.

It is the theory of the defendant National Tea Company that it was not in possession or control of the parking lot; it violated no duty it owed to the plaintiff; it was not guilty of any negligence toward the plaintiff and none was shown by the evidence; the verdict is contrary to the law and the evidence and the trial court erred in refusing to direct a verdict for it and in overruling its motion for judgment notwithstanding the verdict; the plaintiff was not in the exercise of ordinary care for her own safety and the injuries were the proximate result of her own negligence and not of any negligence on the part of the defendant; the court erred in overruling the defendant's motion to withdraw a juror when the plaintiff,

while testifying, volunteered she had had her right breast removed in 1955 because of a cancerous condition; and the verdict is so excessive as to show sympathy, passion, prejudice or improper motive and cannot be justified by the evidence.

The plaintiff's theory is she was a business invitee of the defendant National Tea Company at the time she fell in the parking lot provided by the defendant for the use of its patrons; the parking lot was not a common area retained by the landlord, as that term is used in the law, but was leased to the defendant and over which, with reference to ice and snow removal, the defendant lessee exercised control and maintenance; the ice on which the plaintiff fell did not accumulate from natural causes, but as a result of the defendant lessee's negligence in piling snow in an area of the parking lot where it was caused alternately to melt and freeze and form ice in the particular area where the plaintiff fell, and this condition had existed for approximately three weeks prior to the accident; the defendant's alleged negligence and the plaintiff's alleged exercise of ordinary care were questions of fact properly submitted to the jury; the verdict was not excessive, in view of the nature and extent of her injuries; and no error was committed which warrants the granting of a new trial.

█ So far as is concerned the particular matter here involved and the relationship between this plaintiff, a prospective customer of the defendant National Tea Company, and the defendant as lessee, it can hardly be said the defendant was not in possession or control of the parking lot or at least that portion here concerned, in view of the language of the lease demising and leasing the premises "including . . . rights of way" and including "parking space" and "in event the parking lot area herein demised is not completed . . . a rental credit of Ten Dollars ($10.00) per day is hereby granted . . . until

314

such parking lot area is completed," and "to have and to hold the same, unto the lessee," and, "In consideration of the demise and leasing of the premises aforesaid . . . the lessee covenants . . . to pay . . . as rental for said demised premises . . . ." The physical arrangement of the parking lot and the defendant's store—the parking lot being obviously an important adjunct to the store operations—it being necessary for its patrons to at least come across, if not park their cars in, the lot as a means of ingress and egress in order to patronize its store—and "free parking while shopping" being advertised and held out as an inducement by it to its patrons as one of its services, as well as the facts as to the defendant's efforts to clear the snow from the lot in front of the store, the defendant's apparently regular practice to do so, and its practical, contemporaneous construction, interpretation, and application of the lease—all are further confirmatory of what the lease itself says —the defendant apparently thought it was in possession and control of the parking lot, or the portion here in question, for the present purposes, and as to the matter here involved and the relationship here concerned and the portion of the lot here in question, we think it was.

■ Generally, the tenant or occupant of leased business premises, and not the owner, is liable for injuries to third parties resulting from a defective condition of the demised premises, subject to certain exceptions not here applicable: Jackson v. 919 Corporation (1951) 344 Ill. App. 519, 101 N.E.2d 594.

■ ■ Further, this plaintiff at the time of her injury was clearly a business invitee upon the defendant's leased premises by express and implied invitation and it owed her a duty to exercise due care in the conduct of its business and to guard against subjecting her to danger of which it was cognizant or which might reasonably have been anticipated: Smith

315

v. Kroger Grocery & Baking Co. (1950) 339 Ill. App. 501, 90 N.E.2d 500. Towards such a business invitee the defendant is required to use reasonable care to see that its premises devoted to its business purposes are reasonably safe for its patrons: Denny v. Goldblatt Bros., Inc. (1939) 298 Ill. App. 325, 18 N.E.2d 555. It was the duty of the defendant towards such a business invitee to exercise reasonable care for her safety while she was on a portion of the premises required for the purpose of her visit—it must use reasonable care to keep such premises reasonably safe for use by such invitee—it violates its duty towards such an invitee if it negligently allows such conditions to exist on the property as imperil the safety of such invitees upon the premises: Geraghty v. Burr Oak Lanes, Inc. (1955) 5 Ill.2d 153, 125 N.E.2d 47, which involved an injury to a prospective patron of a bowling alley in its adjacent parking lot. It is the duty of one who invites others upon his premises for business purposes to keep the premises in a reasonably safe condition so that the business invitees will not be injured by reason of any unsafe condition thereof negligently permitted to exist, though the proprietor is, of course, not an insurer as to such invitees: Deitz v. Belleville Co-operative Grain Co. (1933) 273 Ill. App. 164, which also involved an injury to a prospective patron of a grain company in its adjacent parking lot, though there it was held the particular circumstances did not indicate negligence of the defendant. An invitation to enter premises for business purposes carries with it the duty towards the invitee to provide reasonably safe means of ingress and egress, and, where, for example, the only means of access to a second floor public telephone exchange is through a stairway and hall which the public is impliedly invited by the defendant telephone company to use,

316

it is immaterial whether the defendant had leased or had control of the hall and stairway—it is its duty to use reasonable care to make the entry reasonably safe for its business invitees: Steinberg v. Northern Illinois Tel. Co. (1931) 260 Ill. App. 538.

In Schallinger v. The Great Atlantic and Pacific Tea Co. (1956) 334 Mass. 386, 135 N.E.2d 655, the plaintiff's intestate, a prospective customer of the defendant tea company's store, while trying to open the store door in a recessed entranceway to go in, slipped on a patch of ice partly in the entranceway and partly on the sidewalk, which ice had been formed by the melting and dripping of snow and ice accumulated on a metal awning or shelf and company sign across the front of the building above the entranceway. The Court held the tea company lessee liable, and the realty company owner not liable, and said, p. 657–658:

"There was no error in permitting the verdicts against the tea company to stand. One who invites a business visitor to enter his premises owes to such visitor the duty to use reasonable care to keep the premises in a reasonably safe condition for the visitor's use. . . . This duty extends to that part of the premises which is maintained for the visitor's entrance and exit. . . . The patch of ice could be found to be a source of danger to customers entering the store and to have been there for such period of time that the tea company knew or should, in the exercise of care, have known of its existence and have remedied the condition. It could not have been ruled that the entranceway and the ice that had accumulated therein, whatever the cause of the accumulation may have been, were not in the control of the tea company. Except for the provision of the lease whereby the realty company

317

retained, with the exception heretofore stated, control of 'outside portions of the premises,' the tea company, as lessee of the building, would be the party liable to third persons for negligence in the maintenance of the leased premises. . . . The area of the entranceway was not an 'outside' portion of the premises as were the uncovered rear steps on which the plaintiff in the Nunan case was injured. This recessed area was a covered vestibule, open at the front, located within the line of the front wall of the building which bordered on the sidewalk and a part of the store occupied by the tea company. The evidence did not warrant findings as to control which would relieve the tea company from responsibility for maintaining it in a safe condition for customers."

The cases relating to snow and ice on streets and sidewalks, of which there are many, may not necessarily be applicable to matters such as this concerning snow and ice in a parking lot adjoining a store and injuries to a business invitee of that store, but, for such general consideration by analogy as may be appropriate, normally there is no liability for injuries resulting from the general slipperiness of streets or sidewalks due to the presence of snow or ice which have accumulated as a result of natural causes, but there may be liability where snow or ice has been produced or accumulated by artificial causes or in an unnatural way or by a defendant's own use of the area concerned and creation of the condition, and where it has been there long enough to charge the responsible party with notice and knowledge of the dangerous condition: Graham v. City of Chicago (1931) 346 Ill. 638, 178 N. E. 911. Cf. Ritgers v. City of Gillespie (1953) 350 Ill. App. 485, 113 N.E.2d 215; King v. Swanson (1919) 216 Ill. App. 294.

318

We are aware of such cases as Murphy v. Illinois State Trust Co. (1941) 375 Ill. 310, 31 N.E.2d 305, and Durkin v. Lewitz (1954) 3 Ill. App.2d 481, 123 N.E.2d 151, suggested by the defendant, to the effect that where an owner-landlord rents premises to several tenants, retaining control over a part of the same for the common use of the several tenants, he has the duty of exercising reasonable care to keep the premises in a reasonably safe condition and he is liable for an injury which results to persons lawfully in such place from a negligent failure to perform such duty, but we do not believe them applicable here under the circumstances here presented as to this property situation, this lease, this plaintiff as a business invitee, this defendant lessee business invitor, and the particular hazard of the ice here concerned. Whether the owner-landlord of the property here is, or is not, also liable to the plaintiff is not before us, and the Murphy and Durkin cases held, under the circumstances there concerned, only that the owner-landlord was liable, not that the tenant may not also have been liable.

■ Accordingly, we believe the defendant here did owe a duty in the premises to this plaintiff, there is evidence from which the jury might have found it was negligent, whether it was or was not negligent was a question of fact, and in that respect the verdict is not contrary to the law or evidence and there was no error in refusing to direct a verdict for it or in overruling its motion for judgment notwithstanding the verdict.

Representative of the cases referred to by the defendant, in addition to those we've otherwise noted, are Cronin v. Brownlie (1952) 348 Ill. App. 448, 109 N.E.2d 352; Riccitelli v. Sternfeld (1953) 1 Ill.2d 133, 115 N.E.2d 288; Ritgers v. City of Gillespie (1953) 350 Ill. App. 485, 113 N.E.2d 215; Starns v. Postawko

(1952) 347 Ill. App. 77, 106 N.E.2d 145 (abst.); and Blumberg v. Baird (1943) 319 Ill. App. 642, 49 N.E.2d 745 (abst.)—all of which have been considered, but we do not believe them decisive or that they militate against our views here under the facts and circumstances here presented.

 Nor can we say that the plaintiff, as a matter of law, was not exercising ordinary care for her own safety under the circumstances. It is not negligence per se for a person to go upon dangerous premises: Durkin v. Lewitz, supra; ordinarily whether a plaintiff has or has not been guilty of contributory negligence is preeminently a question of fact for the jury; for the plaintiff to be guilty of contributory negligence as a matter of law it must appear that, considering the evidence and the reasonable inferences and intendments that may be drawn therefrom in a manner most favorably to the plaintiff, all reasonable minds would agree that the plaintiff was guilty of contributory negligence: Durkin v. Lewitz, supra; Geraghty v. Burr Oak Lanes, Inc., supra; Murphy v. Illinois State Trust Co., supra; Hulke v. International Mfg. Co. (1957) 14 Ill. App.2d 5, 142 N.E.2d 717. Following those rules we are of the opinion that the plaintiff was not negligent as a matter of law and the question of whether she was or was not contributorily negligent as well as what was the proximate cause of the injuries were properly questions of fact for the jury.

 The defendant urges that the Court committed error in refusing to withdraw a juror during the trial or to grant a new trial after the verdict on the basis that the plaintiff's counsel brought out in direct examination of the plaintiff that she had had her right breast removed in 1955 because of a can-

cerous condition. The defendant says that this prior condition of the plaintiff was brought out for the sole purpose of arousing sympathy. It is the plaintiff's theory, on the other hand, that her condition in that respect prior to her fall here concerned was a proper subject to be brought before the jury relative to damages, because, the plaintiff argues, that surgery resulted in a tying off of certain muscles and a limitation of use of the plaintiff's right arm, though there is no evidence to that effect, specifically. The plaintiff's counsel apparently had what he in good faith considered a proper reason to ask the question and can hardly be said to have been in bad faith. The plaintiff is a registered nurse and at the time of the accident was employed at the Lake Forest Hospital and her duties necessarily involved the use of her arms and hands in giving bedside care and in other activities of her work. The plaintiff urges that the subsequent injury here to her left wrist and arm and the degree of permanent disability resulting therefrom left her more seriously handicapped than if she had had the full use of her right arm. The defendant had objected to a preliminary interrogatory in this line of questioning, which seems not to have been ruled on, and then just after the plaintiff had said she had a breast tumor in 1955 which was cancerous and the right breast had been removed the defendant moved to strike that answer. Part was stricken. Certain other questions were put in that connection, objections made, and the objections sustained. There was no other evidence on the point and apparently no other reference thereto in the presence of the jury. The subject then was argued outside the presence of the jury in the course of which the defendant moved to withdraw a juror and declare a mistrial, which was denied. We are of the opinion that the trial court

properly allowed the defendant's motion to strike a part of this evidence and properly sustained the subsequent objections, as it did not constitute a matter of aggravation of a prior condition and was not a proper element of damages, but, we also believe the trial court properly held that this line of questioning, to the limited extent it had gone, did not, under the circumstances, warrant the withdrawal of a juror and the granting of a mistrial, or a new trial after verdict. The matter of withdrawing a juror and declaring a mistrial, or not doing so, rests in the sound judicial discretion of the Court and ordinarily, unless there is some great abuse of the discretion, its exercise, one way or the other, is not reversible error: Schofield v. Settley (1863) 31 Ill. 515. Motions for new trial, also, are addressed to the sound judgment of the trial judge particularly on questions of evidence, as to which the trial court's judgment is accorded greater latitude than on questions of law, and his action thereon will not normally be reversed except in case of a clear abuse which must be affirmatively shown, the trial judge being in a better position to determine whether a fair trial has been held and substantial justice done: Ledferd v. Reardon (1940) 303 Ill. App. 300, 25 N.E.2d 116; Hulke v. International Mfg. Co., supra. There was no clear abuse of judicial discretion. The only cases the defendant refers to on this, Jones & Adams Co. v. George (1907) 227 Ill. 64, 81 N. E. 4, and Illinois Cent. R. Co. v. Seitz (1903) 111 Ill. App. 242, contain only general language, they are not decisive, and the Illinois Cent. R. Co. case is not at all applicable.

▮▮ As to the amount of the verdict, $7500.00, the amount of damages is primarily a question of fact for the jury to determine, and will not normally be set aside unless so palpably excessive as to indicate some improper motive on the part of the jury:

Hulke v. International Mfg. Co., supra; Smith v. Kroger Grocery & Baking Co., supra. We do not, under the circumstances, consider the amount so palpably excessive.

The judgment will, accordingly, be affirmed.

Affirmed.

WRIGHT, J. concurs.

SPIVEY, J. concurs.