MARLENE WOLTER, Plaintiff-Appellant, *v.* CHICAGO MELROSE PARK ASSOCIATES, Defendant-Appellee.

First District (2nd Division)    No. 77-1071

Opinion filed January 30, 1979.

1012

John A. Doyle, Ltd., of Chicago (William J. Harte, Ltd., of counsel), for appellant.

Robert Schey, of Jonas Schey & Associates, of Chicago (Edwin A. Strugala, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Marlene Wolter, brought this action in the circuit court of Cook County to recover damages for personal injuries she sustained when she slipped and fell on ice in the parking lot of defendant, Chicago Melrose Park Associates. The jury returned a verdict for defendant. Judgment was entered on the verdict. Plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied. Plaintiff appeals.

The following issues are presented for review: (1) whether plaintiff's post-trial motion properly preserved the error alleged concerning the sufficiency of the evidence; (2) whether the evidence proved that plaintiff's injuries were the result of defendant's negligence; and (3) whether certain instructions submitted to the jury were proper.

Defendant, Chicago Melrose Park Associates, owned and maintained a parking lot used for the customers of the Winston Plaza Shopping Center located in Melrose Park, Illinois. On the afternoon of December 28, 1971, plaintiff drove the family station wagon to the Winston Plaza Shopping Center accompanied by her three young children. It was a clear, cold day; visibility was good. Plaintiff turned into the driveway of the shopping center parking lot and proceeded toward a store known as Madigan's. She testified that the driveway was clear of ice and snow. At the west wall of Madigan's, there was a parking aisle marked with a northbound one way sign. Plaintiff turned into this lane and found an available space she approximated to be about 8 or 10 spaces down on the left side of the aisle. She pulled in between two other cars and parked on a northwest diagonal.

After parking, plaintiff opened the driver's door, got out facing toward the front of the car, and noticed she was standing on solid ground. She then leaned back into the car to get her purse and pick up her baby who was in the front seat. She placed her baby in her left arm and her purse over her right arm, and then took several steps backward in order to

clear the baby's head from the car. Her other two children were sitting in the back seat. In order to open the door for them it was necessary for her to walk around the back of the car to the right rear door since she testified that the left rear door of the car had been stuck for some time.

After turning around and taking one step toward the back of the car, she felt her left leg slipping backward, causing her to fall forward. As she was falling, she threw her arm up to protect the baby's head and fell on her left elbow. While on the ground and looking south toward Madigan's for help, she noticed several spots of ice by the rear wheels of other cars. She also noticed the ice patch she had fallen on. She described it as being three feet in diameter, frozen solid, its color blending into the pavement, and located near the left rear wheel of her car. She testified that she had not noticed these ice patches before she fell. As a result of the fall, plaintiff suffered a fracture and dislocation of the humerus from her left elbow joint which required hospitalization and surgery.

Two photographs were admitted into evidence which plaintiff testified depicted the area in which she fell. According to plaintiff, one photograph, taken about 2½ weeks after the accident, showed the "gully" she slipped on, the only difference being that the ice had melted and there was water over one inch deep in it. The other photograph, which plaintiff said she first saw eight months after the accident, showed the general area of her fall with pools of water in several of the parking stalls.

On cross-examination, plaintiff admitted that she did not know the exact parking stall she had pulled into, but it was between the 8th and 10th stall, and that she determined the gully was one inch deep not on the day of the accident but after she went back to the scene a few weeks later. When asked how she knew which gully was the one she slipped on, she answered that she knew it was in the approximate area. Plaintiff admitted that after she got the baby out of the car, she took about two steps toward the back of the car, not one step as she stated on direct examination. Not expecting ice to be there, she said she did not look down at the pavement. She stated that she had frequently used the parking lot in the past but never observed these gullies anywhere in the lot prior to her accident. She also stated that she measured several gullies but selected only one of those to testify about because that was the spot where she was most sure that she fell. She admitted that she did not actually measure the depth of the gullies but rather estimated their depth, and that the gullies were different sizes, some deeper than others.

Lester Kolom, a traffic safety engineer, testified that at plaintiff's request he inspected the parking lot twice in September of 1973, which was almost two years after the date of the accident. He observed the entire area but confined his inspection of the parking area immediately

north of Madigan's west wall to some 15 parking stalls located in the northbound lane.

When checking the smoothness of a surface, Kolom referred to a standard set out in a 1958 publication entitled "State of Illinois Standard Specifications for Roadway and Bridge Construction." The publication, Kolom said, indicated that the standard test for smoothness was that within a 10-foot straight length there should not be more than a one-quarter inch deviation. Kolom testified that this was the standard adopted by the industry. He stated that this standard would also apply to parking lots or any other type of road surface since the design is selected and based upon the heaviest vehicle that will use the surface, and the design, construction, and maintenance of a parking lot surface is the same as a street or highway. Kolom testified that the best way to check for depressions or deviations in the pavement was to inspect the surface shortly after a rainfall so pooling of water was easily observable. A deviation from the standard would have a tendency to create pooling if the water was not conducted away by a drainage system. He inspected the lot in September of 1973, shortly after a rainfall and found it to be defective since he found depressions in the pavement over one-quarter inch deep and pooling of water. In his opinion, ice forming in these depressions created an unreasonably dangerous condition.

Although Kolom testified that there were no specific standards for safety maintenance of a parking lot, he stated that periodic inspections and corrective measures should be taken. He testified that the best measure to take on this type of parking lot was to apply a surface coat of bituminous asphalt to the parking aisles which he noticed was done on the main driveways of the lot. In the alternative, he stated, sand or salt could be used on the ice patches. Kolom testified that this type of pavement deteriorated progressively. Each year additional and deeper crevices would form. This progressive deterioration, Kolom said, was very rapid in the first few years after the initial installation of the lot, and then after about three years it slowed down. Kolom testified that by his observation he could tell that the defects on the lot had been materially the same for the last two years.

On cross-examination, Kolom admitted that he did not record the actual depth of the pools of water but stated they were such gross deviations that he knew they were greater than one quarter inch. He also testified that he had never seen a parking lot after it had been used for a period of time that conformed with the smoothness standard. He was shown records which indicated that $30,000 worth of work was done on the lot between the years 1969 and 1971. He stated that this would tend to show a management interest in reducing risk but could not say due to the

size of the lot whether it was an acceptable management risk without knowing the actual state of repairs.

The only other witnesses to testify at trial were plaintiff's husband, treating doctor, and girl friend who testified in most part to the injuries plaintiff sustained. At the close of plaintiff's case, defendant made a motion for a directed verdict which was denied. The jury returned a verdict for defendant upon which the court entered judgment. Plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied.

## I.

First we consider defendant's contention that plaintiff waived her right on review to challenge the jury's verdict based on the evidence presented, since she failed to specify the grounds in support of this point in her post-trial motion. Plaintiff's post-trial motion alleged that the jury verdict was contrary to law and against the manifest weight of the evidence.

The Civil Practice Act provides that a post-trial motion must specify with particularity the grounds upon which the moving party relies for relief. (Ill. Rev. Stat. 1975, ch. 110, par. 68.1(2).) The purpose of this rule is to allow the trial judge the first opportunity to correct errors alleged to have occurred at trial since it would be unfair for a reviewing court to charge him with these errors if they had not been brought to his attention. *Keene v. City of Chicago* (1st Dist. 1974), 17 Ill. App. 3d 464, 466, 308 N.E.2d 244.

██ Defendant relies on *Keene v. City of Chicago* and *Marks v. Newburger* (1st Dist. 1966), 69 Ill. App. 2d 220, 216 N.E.2d 250, as authority for its contention. These cases are distinguishable on a factual basis. In *Keene*, the post-trial motion asserted that there was no evidence that defendant was guilty of any wrongdoing or that the same was the proximate cause of plaintiff's injury. On appeal, defendant argued it had no duty to provide lighting at the scene of the accident. This was not pleaded by the defendant, raised during the course of the trial, nor tendered to the jury as an instruction. The court found defendant's post-trial motion lacked specificity and stated, "if a post-trial motion fails to indicate with specificity wherein the complaint does not conform to the proof, a court of review need not consider the issue." (*Keene*, at 466-67.) However, this court may consider the issue where the record justifies such action.

In *Marks*, the plaintiff's post-trial motion alleged that the verdict was contrary to law and against the manifest weight of the evidence. However, on appeal the issue of whether plaintiff was a guest or passenger at the time of the accident was raised. Although the court

decided the case on other grounds, it found merit in defendant's contention that the general terms used in the post-trial motion failed to preserve for review the specific question as to the plaintiff's status.

■■ In the present case, plaintiff contends that the jury could not have rendered its verdict based upon all of the evidence. Plaintiff asked the trial judge and is now asking this court to review all of the evidence. Plaintiff is not appealing this case on a specific point not presented at trial, nor is there an issue raised on appeal not brought to the trial judge's attention during the trial. For these reasons, we find the waiver principle inapplicable.

## II.

Plaintiff contends the evidence sufficiently established that defendant had negligently maintained its parking lot in a defective condition, which defect caused an unnatural accumulation of ice and was the proximate cause of plaintiff's injury. Plaintiff requests this court to reverse the judgment entered in defendant's favor and enter judgment in favor of plaintiff on the issue of liability, and remand the case for a new trial on damages, or, in the alternative, to remand the case for a new trial on all the issues.

Before a judgment notwithstanding the verdict can be entered in plaintiff's favor on the issue of liability, the plaintiff must show that all the evidence, when viewed in its aspect most favorable to the defendant, so overwhelmingly favors plaintiff that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

In *Spankroy v. Alesky* (1st Dist. 1977), 45 Ill. App. 3d 432, 435-39, 359 N.E.2d 1078, this court set forth the various standards which had been in use by the trial courts in this State in determining motions for new trial. We held that the standard to be used by the trial court in determining a motion for new trial is the preponderance of the evidence test. We also set forth a definition of "preponderance of the evidence." We stated:

"Preponderance of the evidence, as defined in *Moss-American, Inc. v. Fair Employment Practices Com.* (5th Dist. 1974), 22 Ill. App. 3d 248, 259, 317 N.E.2d 343, means:

'[T]he greater weight of the evidence, not necessarily in numbers of witnesses, but in merit and worth that which has more evidence for it than against it is said to be proven by a preponderance. Preponderance of the evidence is sufficient if it inclines an impartial and reasonable mind to one side rather than the other.' " 45 Ill. App. 3d 432, 436.

We also said "* * * that the granting of a motion for new trial is discretionary with the trial court, and that its ruling will not be reversed

unless a clear abuse of discretion is shown on the record." (45 Ill. App. 3d 432, 436.) With these principles in mind we consider the sufficiency of the evidence.

■ Under Illinois law, a property owner is not liable for injuries resulting from natural accumulations of ice (*Zide v. Jewel Tea Co.* (2d Dist. 1963), 39 Ill. App. 2d 217, 222-23, 188 N.E.2d 383) even after the expiration of a reasonable length of time to charge the owner with awareness that such accumulation may pose a danger (*Foster v. Cyrus & Co.* (1st Dist. 1971), 2 Ill. App. 3d 274, 277-79, 276 N.E.2d 38).

■ However, a property owner may be liable for injuries sustained as a result of ice which did not accumulate from natural causes, but as the result of the owner doing or failing to do something which caused an unnatural or artificial accumulation of ice and it had been there long enough to charge the owner with notice and knowledge of the dangerous condition. *Fitzsimons v. National Tea Co.* (2d Dist. 1961), 29 Ill. App. 2d 306, 318, 173 N.E.2d 534.

Plaintiff's expert witness testified that the depressions in the pavement in which ice formed were due to surface irregularities on the lot, which deviated from specified standards and created an unreasonably dangerous condition. He suggested certain remedial measures defendant could have taken in order to alleviate the condition. Relying on this testimony, plaintiff argues that the ice on which plaintiff fell was not the result of natural accumulation but rather the result of an unnatural accumulation caused by the defendant's failure to correct this known defective condition, or give adequate warning of the condition, and defendant thereby breached its duty to exercise reasonable care for the safety of its invitees. Plaintiff further alleges that at all times she exercised due care for her own safety.

Whether the ice in the present case resulted from a natural or unnatural accumulation, whether this condition proximately caused plaintiff's injury, and whether plaintiff exercised due care were contested issues of fact. Questions of negligence, due care, and proximate cause are ordinarily questions of fact for a jury to decide. (*Haas v. Tomaszek* (1st Dist. 1978), 56 Ill. App. 3d 656, 659, 371 N.E.2d 1240; *Fitzsimons v. National Tea Co.*, at 319-20.) And it is for the jury alone to determine the credibility of the witnesses and the weight of the evidence on disputed questions of fact. (*Kincl v. Hycel, Inc.* (1st Dist. 1977), 56 Ill. App. 3d 772, 781, 372 N.E.2d 385.) A jury is not required to accept the opinion of an expert on the ultimate issue in the case. *Martinet v. International Harvester Co.* (1st Dist. 1977), 53 Ill. App. 3d 213, 222, 368 N.E.2d 496.

■■ ■ In order to recover, plaintiff had the burden of affirmatively showing that the ice resulted from an unnatural or artificial accumulation. Defendant had the duty to a business invitee to maintain its lot in a

reasonably safe condition. (*Fitzsimons v. National Tea Co.*, at 316.) What is or is not a reasonably safe condition is for the jury's determination. (*Martinet v. International Harvester Co.*, at 222.) Only if the jury found that defendant negligently maintained its lot in an unreasonably defective condition would the ice be considered an unnatural accumulation. The evidence indicated that plaintiff's expert did not examine the parking lot until almost two years after the accident had occurred; that plaintiff could not testify to the exact stall she parked in and could not say with certainty which patch of ice she fell on. Plaintiff did not actually measure the spot she was "most sure of" as being the location of her fall but rather estimated its depth.

■ Assuming arguendo, the ice was an unnatural or artificial accumulation, plaintiff had the further burden of proving that defendant had actual or constructive notice of this unnatural condition and failed to take reasonable precaution to avoid injury to others. (*Clauson v. Lake Forest Improvement Trust* (2d Dist. 1971), 1 Ill. App. 3d 1041, 1046, 275 N.E.2d 441.) Plaintiff herself testified that she frequently parked in the lot and never noticed this condition prior to her accident.

■■ ■ Whether defendant had a duty to warn plaintiff of this condition is contingent upon the finding that the ice resulted from an unnatural or artificial accumulation. As was stated in *Newcomm v. Jul* (3d Dist. 1971), 133 Ill. App. 2d 918, 921, 273 N.E.2d 699, "The duty of warning against a particular condition or hazard co-exists with the corresponding liability for the consequences or hazards or the condition if no appropriate warning is given."

■■ ■ The jury rendered its verdict against the plaintiff and in favor of the defendant. The fact that the jury could have decided the other way is not controlling here. (*Gettemy v. Grgula* (1st Dist. 1975), 25 Ill. App. 3d 625, 628, 323 N.E.2d 628.) Based upon the record, we find the evidence when viewed most favorably to defendant does not overwhelmingly favor plaintiff, nor is it clearly evident that the jury arrived at an incorrect result. We do not find an abuse of discretion in the trial court's denial of the post-trial motion for a new trial.

III.

Plaintiff further contends that the trial court committed reversible error in submitting the following instructions to the jury:

> "The owner of property is under a duty to exercise ordinary care not to create an unsafe condition with the customary and regular use of the property, but he is under no duty to remove ice or snow which have resulted from natural accumulation." Defendant's instruction No. 7.

> "The law does not require that a property owner keep all parking

lots in perfect condition at all times, nor does the law impose the duty to correct slight variations from level or other minor defects." Defendant's instruction No. 9.

Plaintiff argues that both of these instructions are argumentative, negative in nature, and without support in the law. As to defendant's instruction No. 7, plaintiff argues that it was an incomplete statement of the law, and the meaning of unnatural accumulation should have been defined for the jury. At trial, plaintiff objected to it on the basis it was incomplete.

■■ This exact instruction has been approved by this court in *Foster v. Cyrus & Co.* (1st Dist. 1971), 2 Ill. App. 3d 274, 278, 276 N.E.2d 38, as correctly stating defendant's duty under Illinois law. A more complete statement of the law on this issue might have included that defendant may be liable for an injury sustained by a business invitee who falls and is injured as a result of the property owner doing something to cause an unnatural or artificial accumulation of ice or from his aggravation of a natural condition. (*Fitzsimons v. National Tea Co.* (2d Dist. 1961), 29 Ill. App. 2d 306, 318, 173 N.E.2d 534; *Byrne v. Catholic Bishop* (1st Dist. 1971), 131 Ill. App. 2d 356, 359, 266 N.E.2d 708.) However, there is no evidence in the record that plaintiff tendered such an instruction. Unless a party tenders an instruction, he waives his right to appeal the failure to give an instruction. Ill. Rev. Stat. 1975, ch. 110A, par. 366(b)(2)(i).

As to defendant's instruction No. 9, plaintiff makes broad allegations that it is argumentative, negative in nature, confusing, and without support in the law. Plaintiff cites no authority to support this position. Defendant replies that this instruction set forth its theory of the case and in any event did not constitute prejudicial error. We do not find defendant's instruction No. 9 to be a misstatement of the law.

■■ A property owner who provides a parking lot for the use of business invitees is charged with the duty of keeping its premises reasonably safe. (*Fitzsimons v. National Tea Co.*, at 316.) Such owner is not an insurer of its patron's safety and is not bound to keep its lot absolutely safe. (*Zide v. Jewel Tea Co.* (2d Dist. 1963), 39 Ill. App. 2d 217, 227, 188 N.E.2d 383.) This reasoning is similar to several Illinois decisions which have held that a municipality which is also charged with the duty of keeping its premises reasonably safe (*Storen v. City of Chicago* (1940), 373 Ill. 530, 534, 27 N.E.2d 53), does not have a duty to keep its premises made available for public use in perfect condition nor correct slight variations from level or minor defects. *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 604, 145 N.E.2d 105; *Davis v. City of Chicago* (1st Dist. 1972), 8 Ill. App. 3d 94, 96, 289 N.E.2d 250; *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 103, 378 N.E.2d 502.

■■ In the present case, defendant argued that its parking lot was not

negligently maintained in a defective condition and the ice resulted from a natural accumulation. The defendant had a right to have the jury instructed on its theory of the case which was supported by facts in evidence or by reasonable inferences from facts in evidence. (*Smith v. Ford* (3d Dist. 1976), 43 Ill. App. 3d 407, 411, 356 N.E.2d 1306.) We do not find that the instructions considered in their entirety were so misleading or prejudicial as to warrant reversal.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN and BROWN,[1] JJ., concur.

---

[1] Justice Brown participated in this decision while assigned to the Illinois Appellate Court, First District.