Lorraine Koehler, Plaintiff-Appellee, v. The Great Atlantic and Pacific Tea Company, Inc., a Corporation, Defendant-Appellant.

Gen. No. 67–82.

Second District.

December 28, 1967.

 

McClory, Bairstow, Lonchar and Nordigian, of Waukegan, for appellant.

Morrison and Nemanich, of Waukegan, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

Defendant appeals from a judgment rendered against it in the amount of $10,000 following a trial by jury. The plaintiff had sued, claiming injuries when she slipped and fell on the exterior entranceway of the defendant's store while she was leaving after making purchases at the store. The issues presented by the appeal are whether there is any evidence to support a finding of negligence against the defendant, whether the verdict is against the manifest weight of the evidence, whether the trial court correctly permitted the introduction into evidence of a certain deposition and whether the verdict was excessive.

There was evidence offered from which the jury could reasonably find that on July 3, 1964, the plaintiff entered defendant's grocery store at Tenth and Lewis Streets in Waukegan, Illinois, to shop for groceries. She was accompanied by her nephew. After shopping, and while she was walking out of the exit door, she slipped and fell on the concrete.

The store is located in a shopping center and, as the plaintiff walked out of the exit door, she first passed over a rubber mat and then onto a concrete sidewalk above which was a canopy or marquee. The rubber mat was situated three or four inches higher than the main portion of the sidewalk in front of the building. There was a slight incline from the edge of the mat to the main portion of the sidewalk. The inclined area was perhaps two

feet in dimension from the mat to the level sidewalk and although the grade of the sloping was testified to as a 20% or 20-degree slope, it would appear to us from an examination of the photographs in evidence that it was, in fact, closer to a 10-degree slope. It was on this slope that plaintiff slipped and fell.

There was evidence that, although there was no freshly spilled or dropped debris or foreign substance on the concrete, still it was smooth, shiny and discolored. The nephew scraped the discolored area with his fingernail and a substance that felt like wax came off. Four days after the accident a chemist, employed by the plaintiff, examined the concrete surface and described the area as being shiny with a thin coat of wax. The chemist scraped a little bit of the wax with his fingernail but could not scrape it with a knife because sand came off the cement when he attempted to do so. The next day he returned with a solvent and removed a portion of the substance from the surface. Upon chemical examination of the substance, he determined it to belong to the wax family.

There was evidence that the accident occurred about 9:30 a. m. and that the outside entranceway had been swept at 9:00 a. m. that same day.

It was the practice of the store to broom sweep the exterior entranceway daily and to hose it down occasionally but not to clean it otherwise. The interior of the store was regularly cleaned and waxed with a material called "Sole-Grip" which is described as a nonslip material which is not subject to trackage either from shoes or wheels of shopping carts. There was also testimony that the characteristics of the substance which the plaintiff's chemist found could possibly come from chemicals used in the production of shoe leather.

Following the accident plaintiff was treated by a doctor who diagnosed her injuries as a fracture of the left

patella. A cast was applied and the patient placed on crutches. Five weeks later the cast was removed and she was later examined by a second doctor, Dr. John B. Griffin, now a resident of California, who found a post-traumatic arthritic condition. His final diagnosis was post chondromalacia of the patella and an ununited fracture of the lateral tibial spine.

The plaintiff's medical expenses consisted of $51 for x rays, $13 for outpatient treatment at the hospital and $153 in physician's fees. There was also evidence that she might need additional surgical treatment of the patella and that the surgical fee for that service would be about $500 and there would be hospitalization of seven to ten days.

Plaintiff testified she was having trouble with the knee, that it was uncomfortable, that it would "creak and crack" when bent and that she continued to have swelling in the knee. She said she was unable to engage in bowling, cycling, boating and gardening which she had done before the accident, that she was restricted in her housework and that she could no longer help her husband with his business by tending and cleaning the shop. She was 44 years of age and has two children.

■ With respect to the defense arguments that the trial court should have granted a motion for a directed verdict and a judgment in favor of the defendant notwithstanding the verdict, we must consider whether or not all of the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defense that no contrary verdict based on the evidence could ever stand. Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967).

■ ■ The proprietor of a business establishment has the duty to exercise reasonable care to keep the property reasonably safe for the use of a customer. This duty is violated when the proprietor negligently allows such

461

conditions to exist on the property which imperil the safety of the business invitee upon the premises. Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 157–158, 125 NE2d 47 (1955).

The factors to be considered here in determining whether or not there has been a violation of the duty are: 1) Did the plaintiff fall? 2) Was there a foreign substance on the floor? 3) Did the foreign substance cause or contribute to cause the fall? 4) Was the foreign substance placed by the defendant or its employees or, if it was not, did the defendant have actual or constructive knowledge of the existence of the foreign substance? 5) Did the defendant take reasonable precautions to correct the condition? We believe that the evidence did establish that the plaintiff fell and that there was a foreign substance on the incline.

It may well be that the foreign substance was not wax from the interior of the store transferred to the exterior concrete by customers' shoes or shopping carts and there is no proof as to where the substance came from, who placed it there, or how long it had been on the concrete, however, the evidence that the concrete was smooth, that plaintiff was on a downhill incline and that the substance was slippery and waxy in nature is sufficient to find a causal relationship between the foreign substance and the fall. While there is no evidence as to how the substance came to be on the concrete, still, there was evidence that the concrete had been broom swept approximately one-half hour earlier, that the substance discolored the concrete and that it was still present some four days later, presumably after four additional sweepings. We believe that this circumstantial evidence was sufficient for the jury to conclude that the substance had been there for an adequate period of time for the defendant, in the operation of due care, to have discovered its existence. See Burns v. Goldammer, 38 Ill App2d 83, 86–88, 186 NE2d 97 (1962). Finally, since the jury might

well find that since the broom cleaning did not remove the substance, the defendant had not exercised due care in curing the condition.

We have reviewed all the evidence in connection with defendant's argument that the verdict is contrary to the manifest weight of the evidence. We note that the testimony of the nonmedical witnesses is not necessarily in conflict since plaintiff does not urge that the foreign substance was floor wax from inside the store. We also note that there were no occurrence witnesses other than those offered by plaintiff. The discrepancies between plaintiff's testimony at the trial and her discovery deposition were minimal.

From this and our review of the evidence set forth above we conclude that, although the liability issue is not without question, the verdict of the jury is not contrary to the manifest weight of the evidence and was not such that the court should have granted a directed verdict or a later motion for judgment notwithstanding the verdict.

It is next contended that the trial court erred in admitting the testimony of Dr. Griffin taken in California by means of an evidence deposition. The basis for the objection is that defendant had submitted written interrogatories to the plaintiff requesting, among other things, certain information with respect to each physician consulted by the plaintiff subsequent to the occurrence. The information requested was the name and address of the physician, the date of each visit or consultation, the place of each visit, the condition for which he was consulted, whether he was examined or treated, the amount of the bill, the date of each written report and the name and address of the person having custody or possession of the report.

The answer to interrogatories insofar as it applies to Dr. Griffin was as follows:

"John B. Griffin, M.D., 1950 Sheridan Road, Highland Park, Illinois (also seen at Lake Forest Hospital, Lake Forest, Illinois, January and March, 1966), seen first on February 10, 1965; seen again on July 26, 1965; report of examinations and treatment in 1966 at present reported to have been cortisone infiltrations; medical reports are in possession of attorney for Plaintiff."

██ Defendant contends that although plaintiff's counsel had furnished to the defense a medical report dated August 20, 1965, that a comprehensive report from the doctor dated March 20, 1965, was not furnished. We do not believe that the court would have been justified in excluding the deposition for this reason. The answer to interrogatories revealed that medical reports were in the possession of the plaintiff's counsel and it would appear that the defense made no objection to the answer to interrogatories.

It would also appear that the March 20th report was furnished to the defense co-counsel in California at the time the evidence deposition was taken and that there was, in fact, no substantial difference between the two reports.

Finally, defendant argues that the verdict of the jury was excessive citing Wyer v. McKeown-Phalin Chevrolet, Inc., 74 Ill App2d 283, 219 NE2d 355 (Abstract 1966). Defendant urges that the radiologist, Dr. Audrey Wilson, who took x rays on the date of the accident found an ancient fracture of the left knee as well as a recent fracture. She took no x rays of the other knee for comparative purposes so it is difficult to determine whether the old condition was congenital or traumatic in origin. The plaintiff denied having any prior complaints or troubles involving the left knee.

██ There was positive proof of the recent fracture and there was adequate medical proof of the post-traumatic condition which gave rise to the resulting perma-

nent pain and disability. Future surgery would partially relieve the condition but such surgery would, of course, involve a substantial additional cost for medical and hospital services. It is our opinion that the verdict, although higher than what normally might be expected for an injury of this nature, is not so excessive as to indicate prejudice on the part of the jury toward the corporate defendant or to require either a remittitur or a new trial on the issue of damages.

█ Just as with respect to liability, this case is not without question on the extent of the damages, however, we believe the case was well tried by both parties in the trial court and the issues in conflict have been ably presented to us here. We do not find justification to disturb the jury's findings and the resulting judgment in either respect.

Judgment affirmed.

DAVIS, P. J. and ABRAHAMSON, J., concur.