HARRY NURNBERGER et al., Plaintiffs-Appellees, v. WARREN AND VAN PRAAG, INC. et al., Defendants-Appellants—(REESE CONSTRUCTION CO., Cross-Claimant, v. VINCENT KOSAREK et al., Cross-Defendants.)

(No. 69-45;

Fifth District—March 10, 1971.

*Modified upon denial of rehearing June 10, 1971.*

Pope and Driemeyer, of East St. Louis, and William A. Schuwerk, of Chester, (Kenneth J. Schuessler, of counsel,) for appellants.

Sam S. Pessin, and Johnson, Ducey & Feder, both of Belleville, (P. K. Johnson, of counsel,) for appellees.

AMENDED OPINION UPON DENIAL OF PETITIONS OF PLAIN-
TIFFS AND REESE CONSTRUCTION COMPANY FOR
REHEARING.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiffs in this action were the Nurnbergers who owned a home in Sparta, Illinois. This home was constructed in 1960 and stood on the

northeast corner of the intersection of Broadway (an east-west street) and Miller (a north-south street) in the City of Sparta.

In the year 1962, the City of Sparta hired defendant Warren and Van Praag, to conduct a survey in regard to street and sewer projects for the City of Sparta. Defendant Warren and Van Praag conducted the survey, and as a part of the over-all planning, prepared plans and specifications for the resurfacing of Miller Street in the City of Sparta from its intersection with Broadway Street, running north for several blocks. The plans and specifications included resurfacing Miller Street; plans for drainage; plans for installing of underground storm sewers; curb and gutter; with necessary manholes. The agreement with the City of Sparta was to include the preparation of the plans and specifications, and supervision of construction of the project, which project was built with the aid of federal money, and which plans and specifications, and completion of the work, were to be approved by the City of Sparta and the Federal Government.

After the plans and specifications of the defendant Warren and Van Praag had been approved by the Federal Government and the City of Sparta, the City of Sparta hired the defendant Reese Construction Co. as the prime contractor to complete the Miller Street project. Defendant Reese Construction Co. employed and entered into a signed contract with the cross-defendant Vincent Kosarek as the sub-contractor to do certain building and construction on said project. There was evidence in the record that Warren and Van Praag were in general charge of the construction of the project.

In the spring of 1964, the contractor and sub-contractor began the construction of the Miller Street project which included street grading, underground culverts to carry surface water, and curb and gutter on the east and west sides of Miller Street. The plaintiff Harry Nurnberger during construction of the project had consulted the City of Sparta and the representatives of defendant Warren and Van Praag in regard to an outlet from his property into the underground sewer in order to eliminate the collection of suface water on his property, as this property was lower than the grade level of Broadway Street and also the grade level of Miller Street. The City of Sparta and defendant Warren and Van Praag agreed and an outlet was placed from the Nurnberger property to the underground sewer.

In the month of June, 1964, the defendant Reese Construction Co. and the cross-defendant Vincent Kosarek were constructing the storm sewer, curb and gutter and outlet from the Nurnberger property into the storm sewer and while concrete was being installed on the project, plywood retainers were placed at the head of the intersection of the storm sewer

and inlet from the Nurnberger property into the storm sewer, which plywood sections were necessary for construction but which also blocked the flow of water into the storm sewer.

In the early evening of the 16th and morning of the 17th day of June, 1964, while the plywood sections were blocking the storm sewer, there was a heavy rain in Sparta. The rain water and surface water from Miller Street, at the intersection of Miller Street and Broadway backed over the curb and onto the Nurnberger property causing damage to the home and various items of personal property located in the home, and in a storage building.

During the course of the rain and immediately thereafter, employees of Warren and Van Praag and cross-defendant Vincent Kosarek were summoned to the Nurnberger home and, with the help of others, removed the plywood that was blocking the storm sewer and removed the construction at a point where the storm sewer on the east side of Miller Street went into a catch basin that was located at the intersection of Miller and Broadway. When these acts were completed, the water receded from the house and property of the Nurnbergers.

The construction of the Miller Street project was completed in the fall of 1964. The construction was approved by defendant Warren and Van Praag; was accepted by the City of Sparta; and was accepted and approved by the Federal Government.

On December 21, 1967, over three years after completion of construction, a heavy rain occurred in the early morning hours. 5.35 inches of rain fell in a period of approximately twelve hours; with most of its occurring between the hours of 2:00 A.M. and 5:30 A.M. Surface water came onto the Nurnberger property, flooding the lower level of the house and again causing damage to the house and personal property.

Plaintiffs brought suit against the City of Sparta, Warren and Van Praag, Inc., Reese Construction Co., Vincent Kosarek and New Amsterdam Casualty Co. for damages to real and personal property arising out of the two occurrences of flooding.

Cross claims were filed by defendant Reese Construction Co. against defendant Warren and Van Praag and against defendant Vincent Kosarek. Defendants City of Sparta, New Amsterdam Casualty Co. and Vincent Kosarek were dismissed from the original complaint. The cross claim of defendant Reese against defendant Warren and Van Praag was dismissed on motion of Warren and Van Praag.

Trial was had and the jury returned a verdict in favor of plaintiffs and against defendants Reese and Warren and Van Praag in the amount of $18,000.00. The jury also returned a verdict in favor of Reese on its cross claim against Kosarek in the amount of $4,500.00. Judgment was entered

for plaintiffs against defendants Reese and Warren and Van Praag for $18,000.00 less $2,500.00 being the amount paid by defendant Kosarek under covenant not to sue. Judgment was entered in favor of Reese against Kosarek for $4,500.00.

Post trial motions were filed and argued. The Court ordered a remittitur of $4,505.50 and the judgment against Reese and Warren and Van Praag was reduced by that amount and judgment entered for $13,494.50 less $2,500.00, being the amount paid on the covenant not to sue. The Court also set aside the judgment of $4,500.00 in favor of cross claimant Reese against cross defendant Kosarek and entered judgment in favor of cross defendant Kosarek.

Both Reese and Warren and Van Praag have appealed the final judgment of the trial court. The issues presented for review by appellants are as follows:

1. Did the trial court err in denying Warren and Van Praag's motion for directed verdict at the close of plaintiff's evidence and at the close of all the evidence and in not entering judgment *n.o.v.* in favor of Warren and Van Praag?

2. Did the trial court err in admitting as evidence of the value of plaintiff's personal property the testimony of Mrs. Nurnberger?

3. Did the trial court err in not granting defendant Reese's motion for directed verdict at the close of plaintiff's evidence and at the close of all the evidence?

4. Did the trial court err in granting Warren and Van Praag's motion for directed verdict against cross claimant Reese?

5. Did the trial court err in denying cross claimant Reese's motion for directed verdict on its cross claim against cross defendant Kosarek and in granting the motion of cross defendant Kosarek for judgment notwithstanding the verdict and thereafter vacating the jury verdict in favor of cross claimant Reese?

6. Did the trial court err in denying the pretrial motion of Reese to amend its cross claim against cross defendant Kosarek to add an additional count?

■■ The First issue is governed by the rule set forth in *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill.2d 494, 510, wherein the Court set forth the standard for directing a verdict or entering judgment *n.o.v.*:

> "* * * rather, we believe the rule is best which in some form finds favor in other States heretofore indicated and which has, in part, been heretofore recognized in this State. In our judgment verdict ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly

favors movant that no contrary verdict based on that evidence could ever stand."

This standard was not met by the evidence in this case. There was evidence to indicate, among other things, that water at no time prior to the construction had accumulated on the Nurnberger property; that the level of the lot to the north of the Nurnberger property had been raised; that the level of Miller Street was raised; that during the construction period no provision was made for carrying water away while the old ditch was destroyed and the new culvert not completed; that a brick retaining wall was built without drainholes which backed water up on the Nurnberger property.

■■ For these reasons we cannot say that the evidence "so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand".

■■ The second issue does not have merit as it has long been the law in this jurisdiction that a housewife may testify as to the value of her household goods with which she is familiar. As was stated in *Brenton v. Sloan's United Storage & Van Co.*, 315 Ill.App. 278, 42 N.E.2d 945, at page 280:

"Each of the plaintiffs, after testifying to familiarity with the nature of the goods deposited, and to a knowledge of the prevailing prices of such goods through shopping with friends, window shopping, noticing newspaper advertisements, testified as to his or her opinion as to the actual damage to such goods. There was some dispute in the trial court and on this appeal as to whether or not the proof of damages would require expert testimony or other testimony as to the value thereof. This court has previously concluded that where personal property is of a usual and ordinary nature, such as household goods, the value thereof was a matter of common knowledge, and any person, including a housewife, may testify as to its value. [Citing cases.] Plaintiffs in this case, therefore, as the owners of the property, were competent witnesses to testify as to their actual value. [Citing cases.]"

Then too, we note that the jury here did not allow damages to the household goods in the amount to which the housewife testified, as will be discussed in a later part of this opinion.

■■ The third and fourth issues are also based on the standard set forth in *Pedrick, supra*. Reese, in its counter claim, contended that the engineering plans prepared by Warren and Van Praag were defective and since Reese was required to follow the plans, Reese was entitled to indemnity to the extent that it sustained damage because of the defective plans. The evidence adduced, however, showed that the manner of

complying with the plans was within Reese's discretion, including the method of installing the drainage inlets from the Nurnberger property. From it the jury could have found that both the acts of Warren and Van Praag and Reese were the proximate cause of the damage to plaintiffs' property in both 1964 and 1967, even though different conditions prevailed at the two different times. Reese's contention that the court erred in not giving its tendered verdict forms which were drafted so that the jury could have separately determined liability and damages for the 1964 flood on one verdict form and then determined liability and damages for the 1967 flood on a separate verdict form is obviously based on its assumption that there was no evidence of its acts contributing to both the 1964 and 1967 damages and its theory that Reese was entitled to be indemnified by Warren and Van Praag for defective plans. Reese, as general contractor, was responsible for all work done on the entire project, and therefore was not prejudiced by the refusal to use the tendered verdict forms by which the jury could have separately determined liability and damages for each, the 1964 and 1967 flooding. We do not consider that the evidence supports the theory of the Reese counterclaim, nor the Reese contention that Reese's fault was limited to negligence in a technical or passive sense. The evidence presented on the question of Reese's right to indemnity from Warren and Van Praag was properly resolved by the court by directing a verdict for Warren and Van Praag.

The fifth issue is that of Reese's cross claim against its subcontractor Kosarek. Prior to the litigation Kosarek purchased from plaintiffs a covenant not to sue for $2,500.00. Thereafter plaintiffs' claim against Kosarek was dismissed and Kosarek remained in the suit only because of the cross claim by Reese. The jury returned a verdict of $18,000.00 against Reese and Warren and Van Praag and also a verdict of $4,500.00 against Kosarek in favor of Reese. This was the amount of damage the jury determined Kosarek had caused. The trial court at the time it entered its judgment reduced plaintiffs' judgment by $2,500.00 on the theory that all the parties entered into a stipulation to this effect prior to trial. Upon the post trial motion being heard the court set aside he judgment of $4,500.00 in favor of cross claimant Reese against cross defendant Kosarek.

Reese contends that Kosarek should remain liable to it for the $4,500.00 which the jury assumedly found was the amount of damage Kosarek had caused by their returning a verdict in favor of Reese against Kosarek on Reese's cross claim, since Kosarek had, in his contract with Reese, agreed "To save Reese Construction Company free and harmless from any damages or cause of action that may arise from the construction of

the items listed in this contract". The items listed included construction and installation of curbs, gutters, storm sewers, inlets, frames, sidewalks and headwalls. Reese had not subcontracted with Kosarek to do all the work on the project.

Reese contends that his position is supported by the annotation, "Release of (or covenant not to sue) one tort feasor as affecting liability of others". 124 A.L.R. 1298 @ 1312 sub-section b.; by an exhaustive study of indemnity and third party practice presented in the University of Illinois Law Forum (1967), Vol. 1, Summer No. 2, p. 236, and the cases of *Griffith & Son Co. v. Fireproofing Co.*, 310 Ill. 331 and *Reynolds v. Illinois Bell Telephone Co.*, 51 Ill.App.2d 334. Kosarek contends that these authorities are not here applicable since they are based on the active-passive negligence approach rather than an indemnity-save harmless theory; a theory which was not timely injected into these proceedings. We do not here find it necessary to consider those authorities, or the position of appellants with reference to them.

We consider that by a proposal in the form of a stipulation offered on behalf of Reese, accepted by plaintiffs' attorney by stating he had no objection, and the implied consent of Warren and Van Praag by their attorney, that those parties agreed that regardless of the amount of damages caused by Kosarek, the damages of Kosarek were paid by the $2,500.00 he paid plaintiffs, and that whatever damages the jury might find were caused by Kosarek the plaintiffs' damages would be reduced only $2,500.00 and not by the amount of damages which were by the verdict for Reese against Kosarek, ultimately determined to be in the amount of $4,500.00.

■■ It is obvious from the record that by reason of the foregoing the trial court reduced the judgment by only $2,500.00, instead of by the amount of damages which the jury assumedly determined that Kosarek had caused. They had no knowledge that Kosarek had bought his peace for whatever damages he had caused plaintiff for $2,500.00; nor were they aware that all the parties, including Kosarek, had agreed while both the plaintiffs' cause of action and the Reese indemnity cause of action were on trial, that whatever verdicts they rendered would be adjusted to fulfill the agreements made, both by the covenant and the stipulation.[1] The trial court in the Order on Post Trial Motions found that the parties to the cause had stipulated to a $2,500.00 reduction of plaintiffs' damages. Appellants made no contention in their post trial motions, nor do they

---

[1] In chambers, in the presence of counsel for plaintiffs, counsel for Warren and Van Praag and counsel for Kosarek, counsel for Reese offered the stipulation, to which none objected, whereupon the court approved the stipulation.

here contend that, the verdict should have been reduced by the amount of the damage which the jury found Kosarek had caused. Reese, by the offer to stipulate, chanced that the damage caused would not exceed $2,500.00; had it not been for that offer the verdict would properly have been reduced by the amount of damage Kosarek caused for which plaintiffs had accepted $2,500.00, and Reese would have received the benefit as a joint tort feasor (with Warren and Van Praag) of a reduction in the amount of the verdict of $4,500.00. Since Reese saw fit to have the judgment against it reduced by only $2,500.00 by agreement of the parties, and gets the benefit of such agreed reduction, Reese will not be heard to contend that its judgment against Kosarek should stand, since it was by Reese's suggestion that it have the benefit of an agreed specific amount for the damages caused by Kosarek, rather than the subsequently determined amount of the Kosarek damage. Reese cannot agree to give plaintiffs a part of the damages Kosarek caused and then contend it is entitled to be indemnified for what it has in part given plaintiffs and in part received the benefit of. The court properly vacated Reese's $4,500.00 judgment against Kosarek.

■■ The last issue presented for review by appellants is whether the trial court properly denied Reese's motion to amend the cross claim against Kosarek which was presented *on the day of trial.* The amendment sought would have included a count alleging plaintiffs' damage, if any, was proximately caused by the "active" negligence of Kosarek and any negligence attaching to Reese was "passive" only; granting it would have warranted delay of the trial, since it contained a new theory. The timeliness of motions for leave to amend rests within the sound discretion of the trial court and we find that discretion was not abused by the denial of this late motion.

Plaintiffs did not file a cross appeal, but in their brief complain of the order of the trial court granting the Motion of Warren and Van Praag to enter a remittitur in the amount of $4,505.50 and the reduction of the judgment theretofore entered by that amount; and have prayed this Court pursuant to its power under Supreme Court Rule 366a (5),[2] enter an additur to the judgment of the trial court in the amount of $4,505.50.

With reference to plaintiffs' evidence of damages, the record shows

---

[2] Supreme Court Rule 366a (5) (ch. 110A, sec. 366a (5), Ill. Rev. Stat.) provides:
    In all appeals the reviewing Court may, in its discretion, and on such terms as it deems just:
        (5) give any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, including a remandment, a partial reversal, the order of a partial retrial, the entry of a remittitur, or the issuance of execution, that the case may require.

damage to real estate in the amount of $15,623.00; and damages to personality as follows:

| | |
|---|---|
| Store Goods (1967) | $2,018.75 |
| Household goods and furniture (1964) | $1,928.00 |
| Household goods and furniture (1967) | $4,505.50 |

Defendants offered no evidence of damage, and did not dispute the evidence of damage to real estate in the amount of $15,623.00 nor the evidence of damage to the store goods in 1967 in the amount of $2,018.75. These two items total $17,641.75 or $358.25 less than the $18,000.00 damage assessed by the jury verdict. Defendants did dispute the plaintiffs' evidence of damages to household goods and furniture incurred in both 1964 and 1967, as noted in the discussion of the second issue presented for review by appellants, and on cross examination from one of plaintiffs' elicited testimony to the effect that the household goods and furniture damaged in 1967 were not totally damaged and that most of those items damaged in 1967 were still being used after the 1967 water damage. It becomes quite obvious that for damages to household goods and furnishings the jury did not allow a $4,505.50 item of damages, but allowed only a total of $358.25 for all damage to household goods and furnishings. We conclude that the verdict of $18,000.00 for damages is supported by the evidence, and that the order of remittitur in the amount of $4,505.50 was in error.

■■ As a result of the foregoing and pursuant to the authority given this Court by Supreme Court Rule 366 (ch. 110A, sec. 366 Ill. Rev. Stat.), we enter judgment herein for plaintiffs Harry Nurnberger and Ruth Nurnberger against defendants Warren and Van Praag, Inc., a corporation, and Reese Construction Co., a corporation, in the amount of $15,500.00 and order execution therefore to issue. We affirm those orders of the trial court consistent with this opinion, including paragraph 1 of the Order on Post Trial Motions, and reverse all orders inconsistent herewith including (C) of the Order on Post Trial Motions.

Affirmed in part, reversed in part; judgment herein entered.

G. MORAN and JONES, JJ., concur.