Esther Lovejoy, Plaintiff-Appellee, *v.* National Food Stores, Inc., Defendant-Appellant.

(No. 71-327; ▓▓▓▓▓▓▓▓▓▓

Fifth District—March 8, 1973.

*Rehearing denied July 9, 1973.*

Edward Neville, of East St. Louis, for appellant.

Keith H. Fitzgerald, of Hallett and Struif, of East Alton, for appellee.

Mr. JUSTICE CREBS delivered the opinion of the court:

The plaintiff, Esther Lovejoy, filed a complaint in the Circuit Court of Madison County alleging that she was injured due to the negligence of defendant, National Food Stores, Inc., while she was a customer in one of its stores. The cause was tried before a judge without a jury and the court entered a judgment against the defendant and assessed damages in the sum of $7,250.00. On appeal, defendant alleges that the court erred in failing to grant its motion for a directed verdict, contending that there was no evidence to support the material allegations pertaining to the negligence of defendant and no evidence of causal connection between the alleged damage and the alleged negligence. It also claims that certain medical bills were improperly admitted into evidence.

Many of the facts surrounding the occurrence in question and the resultant damages are in conflict. The plaintiff's case consisted largely of her own testimony and the testimony of a treating physician together with the admissions of certain employees of defendant made in the course of cross-examination. Plaintiff testified that on the day in question she was shopping in a store owned by defendant and that as she was proceeding down an aisle in that store, some soda bottles which had

been stacked along the aisle fell and exploded causing a glass fragment from one of the bottles to cut her and become lodged in her left leg. The only other customer present on the aisle was situated some 15 feet behind her, selecting cereal from a display, and the fallen bottles were within one foot behind plaintiff. She was initially treated by Dr. Katz who discovered no tendon injury and her recovery progressed normally until approximately four weeks later, when, while stepping off a porch, a distance of approximately 18 inches, she ruptured the achilles tendon on the ankle previously injured. Approximately one week after this incident, plaintiff consulted Dr. Grandia who diagnosed the ruptured tendon and subsequently operated upon her to repair the injury. It was Dr. Grandia's opinion and testimony that the rupture of the achilles tendon was directly attributable to the injury she received while a customer of defendant.

It was plaintiff's theory that defendant was negligent in the manner in which it stacked and displayed soda bottles and that defendant knew or should have known that such a display created a hazard to its customers yet failed to take proper or any precautions to eliminate said hazard. To this end, testimony was elicited from defendant's then store manager, that the soda bottles were customarily displayed by stacking one carton on top of another with a sheet of mylar plastic between the cartons. The plastic sheet rolled up when a carton was removed in order to better display the remaining bottles. Bottles of different size and dimension were kept on these mylar sheets and the display was approximately five cartons high and four cartons deep. It was his testimony that these bottles could be made unstable through handling and that on an ordinary week the average customer count in the store was approximately 10,000 patrons and that the soda was a rapid turnover item. The assistant store manager testified that on a typical Friday, the day of the week on which plaintiff was injured, he would check the soda display three times in order to ascertain that no "hazard" was present and that he would find broken bottles in the aisle with no external evidence as to the cause of the fall and breakage.

Defendant's version of the incident varies substantially from that of the plaintiff. The store manager and the assistant store manager both testified that immediately after the accident, plaintiff told them that she was injured when a fellow customer in the store knocked the bottles from the shelf. They both also claimed that there was no cereal display located on the aisle in question at which the alleged other customer could have been shopping. The hospital emergency room records show as a history given by plaintiff, that the injury occurred as a result of the action of another store customer, and Dr. Katz who treated her in

emergency testified that plaintiff told him that another customer knocked the bottles from the shelf. Dr. Katz also testified that when he examined plaintiff, he was clearly able to view the achilles tendon of her left leg and that there was absolutely no injury thereto at that time. The store manager also attempted to refute the plaintiff's theory of negligence through testimony that he had inspected the display approximately one hour before the accident and immediately thereafter and that on both occasions the display appeared to be stable and in order. It was further brought out that the method employed for displaying soda by defendant was the same as that adopted throughout the industry.

██ There is no dispute as to the standard of care required of a proprietor toward a business invitee. A proprietor owes its patron the duty of exercising reasonable care for her safety (*Mick v. Kroger Co.,* 37 Ill.2d 148, 224 N.E.2d 859; *Fitzsimons v. National Tea Co.,* 29 Ill.App.2d 306, 173 N.E.2d 534), and this duty is violated when the proprietor negligently allows such conditions to exist on the premises which imperil the safety of the business invitee upon the premises. (*Koehler v. Great Atlantic and Pacific Tea Co.,* 90 Ill.App.2d 458, 232 N.E.2d 780.) An action by such a patron is, however, founded on fault and a storekeeper is not the insurer of his customer's safety. *Olinger v. Great Atlantic and Pacific Tea Co.,* 21 Ill.2d 469, 473, 173 N.E.2d 443; *Mueller v. Kaiser,* 74 Ill.App.2d 364, 366, 219 N.E.2d 768.

 It is defendant's claim that there was no violation of its aforementioned duty and that the court should have directed a verdict in its favor at the close of all the evidence. This, of course, it could not do since there was no jury to be directed. The rule is, however, the same with reference to a motion for a directed verdict and for a finding by the court (*Continental Illinois Bank & Trust Co. of Chicago v. National Casket Co., Inc.,* 27 Ill.App.2d 447, 169 N.E.2d 853), which rule requires that a verdict can be directed only where all evidence, viewed most favorably to opponent, so overwhelmingly favors moveant that no contrary verdict based on such evidence could ever stand. (*Nurnberger v. Warren & Van Praag, Inc.,* 133 Ill.App.2d 843, 272 N.E.2d 234.) If no evidence is introduced tending to prove the allegations of the complaint, or if but a bare scintilla of evidence has been adduced, the court should direct a verdict, (*Peters v. Catt,* 15 Ill.2d 255), but where a substantial factual dispute is disclosed by the evidence and where an assessment as to credibility of witnesses and an election between conflicting evidence may be decisive, it is erroneous to direct a verdict. (*Wolfe v. Whipple,* 112 Ill.App.2d 255, 251 N.E.2d 77.) It is with these standards that we must deal in assessing the propriety of the trial court's ruling.

Defendant asserts two cases which it contends required the trial court

to direct a verdict in its favor. In these cases (*Kirchoff v. Tzinberg's Park "N" Shop Food Stores,* 7 Ill.App.2d 201 and *McKinney v. High-Low Foods, Inc.,* 104 Ill.App.2d 217), the plaintiffs were injured when a third party knocked bottles from their display causing them to break and cut the plaintiffs. In both cases, the courts held that defendants were entitled to directed verdicts on the grounds that the store owners were not the insurers of the customer's safety and that the proximate cause of the injury was due not to the fault of the store owner in failing to provide the plaintiff with reasonably safe conditions in which to carry on their business, but rather, by the intervening act of another patron. In the case now before us, however, there is a substantial conflict in the evidence as to whether a third party was involved in the breakage of the bottles which injured plaintiff. Plaintiff testified that the closest other customer was located some fifteen feet to her rear immediately after the accident. In opposition, defendant's store manager and assistant store manager both testified that plaintiff told them immediately after the accident that another customer had caused the bottles in question to fall. Defendant also elicited testimony from the physician who treated plaintiff immediately after the accident to the effect that plaintiff stated to him that another customer knocked the bottles off the display and the hospital emergency room records reflect the same history. The nurse who took the emergency room records did not, however, testify as to the source of this history and the doctor admitted that it was likely that he obtained his history from her record, which is in conflict with his prior testimony. Plaintiff emphatically denied the presence of anyone else who could have knocked the bottles off.

■■ In assessing the evidence, we find that in order to justify defendant's motion on the grounds set forth in the *Kirchoff* and *McKinney* cases, it would be necessary to totally disregard the plaintiff's testimony. This cannot be done as all evidence, both plaintiff's and defendant's, must be considered, and plaintiff's evidence takes the case out of the scope of the cited cases.

■■■ Defendant also claims that the judgment was against the manifest weight of the evidence and should therefore be reversed. The issues of both liability and causal connection between injury and damages are not without question. On the issue of liability, the court was not only faced with conflicting evidence as to whether there was an intervening proximate cause through the acts of a third party, but also with conflicting evidence of negligence. Defendant presented testimony that the display was checked one hour before and immediately after the occurrence in question and that it was in order and properly stacked and also that the manner of display was uniformly adopted by the industry

as a whole. The plaintiff, on the other hand, presented an in-court demonstration of the display and secured an admission by defendant's assistant manager that he made periodic inspections of the display to check for "hazards" that might be present and that he would find bottles broken in the aisle without explanation. The store manager testified that the bottles could become unstable through handling and that the soda in question was a rapid turn-over item in a store which served approximately 10,000 customers weekly. It was also brought out that the soda was stored in the manner adopted in order to provide a better view of the remaining bottles and that shelves rather than the roll-up plastic sheets would provide more stability. There was, therefore, evidence which, if believed, would establish that defendant failed to use reasonable care by selecting a manner of display which it recognized as creating a hazard to its customers. The evidence and the inferences reasonably to be drawn therefrom is irreconciliably in conflict and it was the function of the trial court to assess its credibility and weigh the result in reaching its verdict, a function with which we will not interfere. In view of this conflict, we cannot find as a matter of law that the trial court decision of negligence on the part of defendant was against the manifest weight of the evidence.

■■ We also find that the trial court decision that the rupture of plaintiff's achilles tendon was proximately caused by the original injury to plaintiff which occurred some weeks prior thereto was likewise not against the manifest weight of the evidence. An orthopedic specialist, Dr. Grandia, testified that in his opinion it was highly improbable that such a rupture would occur without a previous injury to the damaged tendon and that in view of the fact that plaintiff had had no problem with the ankle prior to the injury complained of he felt that the rupture was as a direct result of the injury she received when cut by the exploding soda bottle. This testimony was contradicted by the physician who originally saw plaintiff who testified that his examination of the tendon revealed no injury. Again, the trial court was required to weight irreconciliable conflicts in evidence and we will not interpose our opinion where there was sufficient credible evidence to justify the decision of the trial court.

■■ Defendant's final claim is that the court erred in accepting certain exhibits but we find this claim to be without merit and therefore affirm the decision of the trial court.

Judgment affirmed.

EBERSPACHER, P. J., and JONES, J., concur.